## CITY OF TYLER V. TYLER BUILDING AND LOAN ASSOCIATION.

### No. 1330. Decided June 2, 1904.

**1.—City—Taxation—Inhabitants.**

The law conferring upon a city of more than ten thousand inhabitants the right to levy taxes exceeding the rate permitted in cities having less than that number, implied a grant of authority to the city to ascertain, by any reasonable and suitable method, the facts upon which the right to levy such tax depends, no method for their determination being prescribed by the statute. (P. 75.)

**2.—Same—Resisting Collection.**

Where a city incorporated under the general law having taken a census and declared the result to show more than ten thousand inhabitants, assumed the powers of a city of such population, its right to levy the taxes permitted to such a city could not be questioned by a private taxpayer, in a suit for recovery of his taxes by the city, on the ground that it had not, in fact, the population entitling it to levy such rate; the question of its authority could only be determined by a quo warranto proceeding. (P. 75.)

**3.—City Bonds—Suit for Taxes.**

Suit for the collection of taxes to meet interest and sinking fund on refunding bonds for an indebtedness for waterworks, issued by a city acting as one having more than ten thousand inhabitants, can not be defeated by a taxpayer on the ground that the bonds were invalid for want of the requisite population to authorize their issuance. (Pp. 75, 76.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Smith County.

*R. P. Dorough* and *D. M. Reedy,* for appellant.—The pleadings showing that the city of Tyler was acting and operating as a city of over 10,000 inhabitants, the appellee could in this suit neither question nor deny the right of the city to act in such corporate capacity. City of El Paso v. Ruckman, 92 Texas, 86; McCrary v. City of Comanche, 34 S. W. Rep., 679; Troutman v. McCleskey, 7 Texas Civ. App., 561; Graham v. City of Greenville, 67 Texas, 62; Brennan v. City of Weatherford, 53 Texas, 330; Rellstab v. Borough of Belmar, 34 Atl. Rep., 885; Bird v. Perkins, 33 Mich., 28; Austrian v. Guy, 21 Fed. Rep., 500; Bateman v. Florida Commer. Co., 8 So. Rep., 51; Judson v. Plattsburg, 3 Dill., 181; Mendenhall v. Burton, 22 Pac. Rep., 558; Krutz v. Paola Town Co., 20 Kan., 397; St. Louis v. Shields, 62 Mo., 247; Tisdale v. Town of Minonk, 46 Ill., 9; Geneva v. Cole, 61 Ill., 397; Dillon on Mun. Corp., sec. 43; Quint v. Hoffman, 37 Pac. Rep., 514.

The city council of appellant having heard the evidence and found the fact to be that appellant contained more than 10,000 inhabitants at the time Adams took the census, and having officially determined that the city of Tyler should thereafter act and operate as a city of more than 10,000 inhabitants, that question should not have been left to the jury to determine in this collateral proceeding. Same authorities.

The city of Tyler having determined and declared itself to be a city of over 10,000 inhabitants, and that it thereafter act and operate as such, it remained in legal contemplation a city of over 10,000 inhabitants, and had the right to levy taxes to the extent possessed by cities of over 10,000 inhabitants.

The court should have instructed the jury to find for appellant the amount of taxes levied for the city water works refunding bonds for the years 1899, 1900 and 1901, because they were valid obligations of appellant. Winston v. City of Fort Worth, 47 S. W. Rep., 740; Tulare Irrigation District v. Shepard, 185 U. S., 1; Waite v. Santa Cruz, 184 U. S., 302; King v. City of Superior, 117 Fed. Rep., 113; City of Beatrice v. Edminson, 117 Fed. Rep., 433; Wetzell v. City of Paducah, 117 Fed. Rep., 654; Andes v. Ely, 158 U. S., 312; Evansville v. Dennett, 161 U. S., 434; Township of Pompton v. Cooper Union, 101 U. S., 196; Municipal Trust Co. v. Johnson City, 116 Fed. Rep., 458; Board of Commissioners v. Vandriss, 115 Fed. Rep., 866; City of Kearney v. Woodruff, 115 Fed. Rep., 90; Coler v. Dwight School Township, 55 N. W. Rep., 587; Town of Brewton v. Spira, 17 So. Rep., 606; Fairfield v. Rural Independent School District, 116 Fed. Rep., 838.

The city of Tyler being estopped, by the recitals in the said bonds as well as by the recitals in the ordinance authorizing their issuance, to deny their validity, the court should have instructed the jury that they were valid obligations of said city, and they should so find.

*Duncan & Lasseter,* for appellees.—Defendant's answer alleging that the city of Tyler at the times of the levies of the taxes in question did not contain and never did contain as many as 10,000 inhabitants, and that said taxes were wholly in excess of those which under the Constitution and laws might be levied and collected by a city of 10,000 inhabitants or less, and that such taxes were so levied without authority of law, constituted a direct attack upon the validity of such levies, and the court did not err in overruling plaintiff's first special exception as complained of in its first assignment of error. 2 Sayles' Civ. Stats., arts. 4343-4349; Blessing v. City of Galveston, 42 Texas, 641; State v. Smith, 55 Texas, 447; Frosh v. City of Galveston, 73 Texas, 401; Lum v. Bowie, 18 S. W. Rep., 142; Jefferson Iron Co. v. Hart, 18 Texas Civ. App., 530; Williams v. Davidson, 43 Texas, 1; Dean v. Lufkin, 54 Texas, 265; Wood v. City of Galveston, 76 Texas, 126; City of Dallas v. Ellison, 10 Texas Civ. App., 36; International & G. N. Ry. Co. v. State of Texas, 75 Texas, 356; State v. Smith, 55 Texas, 451; Dart v. Houston, 22 Ga., 506; People v. Whitcomb, 75 Ill., 172; 1 Dill. on Mun. Corp., sec. 420; 2 Dill. on Mun. Corp., secs. 897, 914, 916; 23 Am. and Eng. Enc. of Law, 607, 632, 639, 640 and notes; High on Ex. Legal Rem., secs. 617, 618-642; Law v. People, 87 Ill., 385.

In view of the pleading of defendant, raising the question of the validity of the census of 1895, and alleging that the city of Tyler did not in 1895, nor at any date subsequent thereto, contain as many as

10,000 inhabitants, and in view of the abundant evidence in support of such allegations, the court did not err in submitting to the jury the question as to whether the city of Tyler, when Adams took the census in 1895, contained 10,000 inhabitants or over, and as to whether it contained 10,000 inhabitants or over at the time of the tax levies of 1898, 1899, 1900 and 1901.

The alleged Adams census of 1895 not having been taken by any authorized official, Adams being city secretary at the time he was employed to take it, and there being no compliance with the existing city ordinances in providing for taking it, and in taking it, in that there was no ordinance passed specially providing the method and procedure therefor, and in that Adams was not appointed by the mayor by and with the advice and consent of the city council, did not qualify by taking the constitutional oath, did not make his returns thereof to the mayor under sworn certificate as to completeness and correctness nor file in any office of the city the rolls and reports, did not swear to same either by written or oral oath; there was no legal evidence that any ordinance or resolution adopting the census was ever passed. The census rolls were never returned into the office of the city secretary, to the mayor or city council, never examined or verified by any officials of the city or by the city council; no evidence heard in connection therewith upon the question of verity and accuracy; and there being no evidence in the records of the city of the taking and return of said census; and the rolls having disappeared, so that they were not and never could be filed as required by law, said census was unofficial in character and void; and the court did not err in submitting to the jury the questions as to population for the years 1895, 1898, 1899 and 1901. Sayles' Rev. Stats., arts. 400, 566, 387, 411, 568.

The original waterworks bonds having been authorized and issued for the construction of a system of waterworks, prior to the adoption of the constitutional amendment to section 9, article 8, in September, 1883, such bonds were without constitutional authority and void; and the refunding bonds, issued in exchange for the unpaid issue of such original bonds in 1899, were also void, and the city was without authority to levy taxes to pay either the principal or interest thereon; and the court did not err in instructing the jury to find for the defendant the amount of the taxes in question in this suit levied for the city waterworks bonds. Constitution of 1876, art. 8, sec. 9; same section as amended in September, 1883; Water and Gas Co. v. Cleburne, 1 Texas Civ. App., 580.

There being, on August 22, 1882, no constitutional authority to cities of under 10,000 inhabitants to levy taxes for the purpose of paying interest and creating a sinking fund for the payment of bonds issued for the purchase or erection of waterworks, such bonds were absolutely void, and did not, on August 4, 1899, when the $21,000 of refunding waterworks bonds were issued in exchange therefor, nor at any other time, constitute nor represent an existing indebtedness against the city of Tyler; and so the said refunding bonds were without consideration,

unauthorized by the Constitution and laws, and were therefore void; and the court did not err in instructing the jury to find for the defendant the amount of the taxes in question levied for waterworks bonds.

The original waterworks bonds, having been authorized and issued by a city incorporated under the general laws, of under 10,000 inhabitants, on August 22, 1882, for the purpose of the erection and purchase of a system of waterworks, and there being at that time no constitutional authority for the levy and collection of a tax to pay the principal and interest on same, and the Constitution providing that "No debt for any purpose shall ever be incurred in any manner by any city * * * unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and provide at least two per cent as a sinking fund," said bonds were absolutely void, and at the time of the issuance of said refunding bonds in 1899, did not constitute an existing indebtedness against the city of Tyler; and the authorization and issuance of refunding bonds for same in 1899 was an attempted original creation of a debt; and the city of Tyler, at that time having less than 10,000 inhabitants, having no authority to levy taxes other than for general purposes and for the payment of debts incurred prior to the adoption of the constitutional amendment to section 9, article 8, in 1883, and having levied for that year beyond the limit of 25 cents for general purposes, said refunding bonds were void, and the court did not err in instructing the jury to return a verdict for the defendant for the amount of the taxes in question levied for the payment of such waterworks bonds. Constitution of 1876, art. 11, sec. 7; Bolton v. City of San Antonio, 21 S. W. Rep., 64; Terrell v. Dessaint, 71 Texas, 772; Biddle v. City of Terrell, 82 Texas, 336; Galveston v. Loonie, 54 Texas, 525; Gould v. City of Paris, 68 Texas, 514; Citizens Bank v. Terrell, 78 Texas, 451; Polly v. Hopkins, 74 Texas, 145.

The city of Tyler, not having the constitutional power and authority to authorize and issue the original bonds of August 22, 1882, nor to levy taxes to meet their payment, they were absolutely null and void, and constituted no indebtedness against the city; and the city could not by any recitation in the ordinance authorizing the refunding bonds in July, 1899, acquire the power by estoppel to issue the said bonds of 1899.

Where there is an entire absence of power in a municipal corporation to issue bonds, it is also without power in any way to create an estoppel which will give them validity. Bank v. Terrell, 78 Texas, 450; Peck v. Hempstead, 3 Texas Civ. App., 350; Merrill v. Monticello, 138 U. S., 673; Smith, Modern Law Mun. Corp., secs. 995, 993, 1001, 1002; Norton v. Shelby Co., 118 U. S., 425; Township of Doon v. Cummins, 142 U. S., 366.

There being no mutuality in the acts and declarations claimed by appellant, as constituting an estoppel as between the city and appellee, a taxpayer, and no participation nor acquiescence by said taxpayer in the acts and declarations claimed by appellant to constitute an estoppel,

the city can not claim therefrom the power to levy upon his property an unconstitutional and void tax.

The sole question on this phase of the case is as to the validity of the tax in question, as tested by the constitutional and charter powers of the city, and not as to the validity or invalidity of the bonds in question, as tested by any question of estoppel arising between the city and a bond-holder.

The validity of the waterworks tax in question as between the city and appellee, a taxpayer, is properly tested by the constitutional and charter powers of the city, and the validity or invalidity of the bonds as resting upon the facts alleged to constitute an estoppel in favor of the bondholder can not furnish as against the taxpayer the power to levy the tax, nor determine the validity or invalidity of the bonds as representing a general debt against the city by reason of the existence or non-existence of facts constituting an estoppel. That is to say, the validity of the bonds by reason of an estoppel arising between the city and the bond-holder can not add to the city the power to levy a tax to pay the bonds; they may still exist, if valid, by reason of an estoppel, a general debt against the city to be paid from any sources properly applicable thereto; and so the court did not err as complained of in said seventh assignment.

BROWN, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals for the First District, as follows:

"In this cause now pending before this court on appeal there are presented among others the questions hereinafter propounded, and we deem it wise to certify them for your decision. They arise upon the following state of facts as disclosed by the record:

"The city of Tyler, assuming to act in the premises as a city of more than ten thousand inhabitants incorporated under the general laws, brought this suit against appellee to recover municipal and school taxes alleged to be due it by appellee for the years 1898, 1899, 1900 and 1901.

"Plaintiffs averred that having incorporated under the general laws in 1877, its mayor in 1894, in pursuance of a resolution passed by its council, procured a census of the city to be taken, which having been done, it was in 1895 duly declared by resolution to be a city of over ten thousand inhabitants, and that it thereafter acted as such.

"The taxes sued for are in excess of what may have been lawfully levied by a city of less than ten thousand inhabitants but within the power of a city of the class alleged.

"The action is a simple suit for taxes, and the appellee answered and defended in its capacity as a private taxpayer.

"The taxes within the power of a city of ten thousand and less to levy and assess were conceded to be due and recovery was had therefor. The recovery of the excess was resisted by appellee on the ground, among other things, that the inhabitants of the city of Tyler had never

at any time been·as many as ten thousand in number, and the city therefore had no power to levy the excess in question.

"To this defense the city excepted on the ground that the issue of the number of inhabitants of the city and its consequent right to act as and exercise the power of a city of over ten thousand can not be raised in a proceeding of this sort.

"In the answer it was also averred that a part of the taxes sought to be recovered were levied to pay interest on and create a sinking fund for the discharge of certain outstanding waterworks bonds issued by the city prior to its assumption of the power of a city of over ten thousand inhabitants, and of certain funding bonds issued in lieu thereof, and the payment of the taxes levied for this purpose was resisted on the ground that a city of ten thousand and less at the time of the issuance of the original bonds had no power to issue bonds for such purpose; that the original bonds were therefore void and the funding bonds also void.

"To this part of the answer an exception was urged on the ground that the validity of the bonds could not be adjudicated in this suit, the holders thereof not being made parties.

"The exceptions above mentioned were overruled by the trial court and proof heard upon the issues thus made.

"It was shown upon the trial that upon the date alleged in the petition, a census having been taken, the city council by resolution declared the city to have over ten thousand inhabitants and proceeded to act and thereafter acted as a city of that class. The taxes sued for were levied and assessed upon that assumption, and in issuing the funding bonds in question and other bonds it had satisfied the Attorney-General of the State of its right to so act and so secured his approval of the bonds.

"The jury found upon sufficient evidence that the plaintiff city.had never at any time had as many as ten thousand population, whereupon the city's recovery was limited to the amount conceded to be due.

"Questions: First. Did the trial court err in overruling plaintiff's exception to the defense that the city had never as much as ten thousand population, or in hearing evidence upon the issue after it was shown that it had asumed to act as a city of that class?

"Second. Did the trial court err in permitting the assault upon the validity of the waterworks funding bonds and the tax levied for their payment in the absence of the bondholders as parties to the action?"

Answer to the first question: It was error for the trial court to overrule the exceptions by the plaintiff to defendant's answer, which alleged that the city of Tyler did not contain a population of ten thousand.

There is much obscurity and confusion in the provisions of the Revised Statutes, title 17, concerning the powers of cities and towns and of towns and villages, but it is unnecessary for us to undertake to

clear up those obscurities, as they do not affect the question which is presented in this case.

Under the said title, a town which contained more than two hundred people and less than ten thousand might be organized into a town or village whereby it would be vested with the powers enumerated in chapter 11 of that title. A town containing over one thousand inhabitants could be organized as a city under the provisions of chapter 1 of the said title, and, being so organized, would be vested with the powers prescribed in the first ten chapters of that title. Embraced in this last class of corporations might be cities containing more than ten thousand population when organized, or the population might after organization be increased to a number greater than ten thousand, and in either case the city would come within this provision of the law: "Cities having more than ten thousand inhabitants may levy, assess and collect taxes not exceeding one and one-half per cent on the assessed value of real and personal estate and property in the city, not exempt from taxation by the Constitution and laws of the State." This power depends upon the city having more than ten thousand inhabitants, a fact that must be ascertained before the tax is levied.

There is no method prescribed by the statute for determining when a city has more than ten thousand inhabitants, but the Legislature having conferred upon the city council power to levy and collect a given rate of tax, conditioned upon the fact that the city has the requisite population, there is in the grant of power, based upon the limitation of population, an implied grant of authority to ascertain the facts upon which the right to levy the tax depends. Riggins v. Richards, 8 Texas Ct. Rep., 908. Any reasonable and suitable method by which a city should ascertain the facts and make the record thereof would be supported by the implied power arising out of that expressly conferred. After the city of Tyler ascertained the population within its corporate limits and declared that it assumed the powers of a city of more than ten thousand population it occupied the same position as if it had been incorporated as a city of ten thousand. There can be no doubt that when the city once assumed under the provisions of this law the powers of a city of ten thousand people that fact could not be questioned, except by a quo warranto proceeding, instituted as prescribed by the laws of the State for inquiring into such matters and for the dissolution of the corporation if it had improperly assumed those corporate functions. In this suit for the collection of taxes levied by the city it was not competent for the taxpayer to raise the question whether the city had ten thousand inhabitants. Bird v. Perkins, 33 Mich., 28; State v. May, 34 Atl. Rep., 885; Quint v. Hoffman, 103 Cal., 506; Mendenhall v. Burton, 22 Pac. Rep., 558; St. Louis v. Shields, 62 Mo., 247; Troutman v. McCleskey, 7 Texas Civ. App., 561; McCrary v. Comanche, 34 S. W. Rep., 679; City of El Paso v. Ruckman, 92 Texas, 86.

Answer to the second question: The facts stated do not show any proper grounds upon which the taxpayer could call in question the

validity of the bonds issued by the city. By the Act of 1887 (Laws 20th Leg., p. 37), the councils of all cities having a population of more than one thousand incorporated under the general laws of the State were given power to levy and collect taxes "for the purpose of constructing, or the purchase of public buildings, waterworks, sewerage, street improvements and other permanent improvements within the limits of such cities or towns; and all cities and towns providing for such improvements shall have the power to issue coupon bonds of the city therefor in such sum or sums as they may deem expedient, to bear interest not exceeding six per cent per annum," etc. The city of Tyler had the power to issue bonds for the waterworks, and no facts are stated which would show that the bonds were not issued in accordance with the requirements of the statute. By article 419, Revised Statutes, the city had authority to refund the waterworks bonds and it will be presumed, in the absence of any fact stated to the contrary, that the law was complied with. There being nothing to show that the city was without authority to issue the bonds, we answer that the taxpayer could not set up irregularities in the issuance of the bonds as a defense against the collection of the tax.