DE SHAZO et al. v. WEBB, Co. Atty.*
No. 1724.

Court of Civil Apeals of Texas. Eastland.
July 9, 1937.

---

* Certified to Supreme Court Oct. 1, 1937, pending final disposition of a motion for rehearing the question of the unconstitutionality of the statutes.

C. F. Sentell, of Snyder, for appellants.
E. T. Brooks, of Abilene, for appellee.

266

FUNDERBURK, Justice.

This action is an election contest. It was brought by E. D. De Shazo, Martin Reep, and E. P. Simpson, in the capacity of trustees of Camp Springs Common School District No. 4 of Scurry County, and by said parties, together with six others in the further capacity of *"resident citizens,* property tax payers and qualified voters of Scurry County, Texas, and Camp Springs Common School District No. 4 of said Scurry County." (Italics ours.) R. W. Webb, county attorney of Scurry county, is contestee.

The election held in said school district was to determine whether that district should be consolidated with Hobbs Independent School District of Fisher County. Certain illegalities in the election were alleged, which it was claimed resulted in a certification or declaration of the result of the election different from the true result. There were allegations to the effect that the result of consolidation would be to subject contestants' property to increased and changed taxing powers and increased taxes; that said Camp Springs District owed about $20 indebtedness, while the Hobbs District owed $15,000.

The trial court sustained a plea to the jurisdiction on the ground that "neither the pleadings nor evidence showed that the contestants had any justiciable interest in said cause in their personal capacity, or in any representative capacity." In accordance with that conclusion, the action was dismissed. The contestants have appealed.

The plea to the jurisdiction sustained by the court prayed judgment of the court whether it had jurisdiction to "hear and determine the *alleged matters set out in plaintiffs' petition."* (Italics ours.) The order sustaining the plea was the judgment thus prayed for. Although the court had heard evidence and the judge filed conclusions of fact and law, such, we think, became immaterial and should be disregarded as having no bearing upon the question of the correctness of the judgment. The court adjudged that contestants by their pleadings showed no justiciable interest, for which reason the action was dismissed. The only question is: Did the contestants by the allegations in their pleadings show a right within the jurisdiction of the court to contest the election?

By the allegations of their pleadings and (if that were material) by the undisputed evidence, contestants did have such right,

unless R.S.1925, arts. 3069 and 3070 are unconstitutional, and therefore void.

This statement is supported by the fact that said statutes clearly and certainly purport to authorize such action by the contestants as residents of the school district.

Said statutes are as follows:

"Art. 3069. If the contest be for the validity of an election held for any other purpose than the election of an officer or officers in any county or part of a county or precinct of a county, or in any incorporated city, town or village, any *resident* of such county, precinct, city, town or village, or any *number of such residents,* may contest such election in the district court of such county in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter for contesting the validity of an election for a county office." (Italics ours.)

"Art. 3070. In any case provided for in the preceding article, the county attorney of the county, or if there is no county attorney, the district attorney of the district, or the mayor of the city, town or village, or the officer who declared the official result of said election, or one of them, as the case may be, shall be made the contestee, and shall be served with notice and statement, and shall file his reply thereto as in the case of a contest for office; but in no case shall the costs of such contest be adjudged against such contestee, or against the county, city, town or village which they may represent, nor shall such contestee be required to give any bond upon an appeal."

These articles, unchanged, were, respectively, articles 3077 and 3078, R.S.1911, articles 1804t and 1804u, R.S.1895, and articles 1752 and 1753, R.S.1879. They have, therefore, purported to be the law for at least 58 years.

Questions concerning these provisions which necessarily presupposed their validity have been before the Supreme Court and the other appellate courts of this state many, many times, without any question ever having been raised, so far as we can find, of the constitutional power of the Legislature to authorize "any resident" or "any number of * * * residents" to contest the character of elections as provided in said statutes.

In the three divisions of the powers and functions of government, election contests belong to the legislative department, and

not to the judicial department, unless by the 1891 amendment of article 5, § 8 of the Constitution, adding to the jurisdiction of the district court the subject of "contested elections," the nature of such actions was thereby converted from legislative to judicial. Prior to said amendment of the Constitution the proposition was thoroughly settled by the decisions, that the subject of election contests pertained to the legislative and not the judicial department of the Government. It was established that an election contest was not "a suit, complaint or plea." State ex rel. Jennett v. Owens, 63 Tex. 261; Gibson v. Templeton, 62 Tex. 555; Ex Parte Towles, 48 Tex. 413; Williamson v. Lane, 52 Tex. 335; Ex Parte v. Whitlow, 59 Tex. 273; Wright v. Fawcett, 42 Tex. 203; Walker v. Tarrant County, 20 Tex. 16; Rogers v. Johns, 42 Tex. 339; Seay v. Hunt, 55 Tex. 545. An election contest was not "a civil case." Williamson v. Lane, supra.

■ The question naturally suggests itself: Was the nature of an election contest changed by the 1891 amendment of the Constitution? However valid the argument would seem to be that a change was thus effected, the most emphatic answer of the decisions is to the effect that there was no change. Odell v. Wharton, 87 Tex. 173, 27 S.W. 123; Robinson & Watson v. Wingate, 36 Tex.Civ.App. 65, 80 S.W. 1067, 1070; Norman v. Thompson, 96 Tex. 250, 72 S.W. 62; Buckler v. Turbeville, 17 Tex.Civ.App. 120, 43 S.W. 810; Bassel v. Shanklin (Tex. Civ.App.) 183 S.W. 105; Turner v. Allen (Tex.Civ.App.) 254 S.W. 630; McCall v. Lewis (Tex.Civ.App.) 263 S.W. 325; Ladd v. Yett (Tex.Civ.App.) 273 S.W. 1006; Thurston v. Thomas (Tex.Civ.App.) 7 S.W. (2d) 105; Calverley v. Shank, 28 Tex.Civ. App. 473, 67 S.W. 434. In the first case cited, the Supreme Court having before it the amendment of 1891, reaffirmed that "a contested election is not a civil suit or cause, and therefore cannot be tried by the proceedings had in such cases." This and the other decisions cited undoubtedly establish, and remove from the field of controversy, the proposition that actions or proceedings to contest elections are not suits, complaints or pleas, or civil cases of which district courts had jurisdiction under article 5, section 8, of the Constitution, both before and after said 1891 amendment.

■ It is our understanding that the Legislature has the power to enact any law not in conflict with the Constitution of the state, or of the United States, or of valid laws enacted under authority of the latter. If so, we think we may assume, it not being contended otherwise, that there is no conflict between articles 3069 and 3070 and the Constitution of the United States, or any federal statute.

Since counsel for the contestee cite only article 5, § 21, and article 4, § 22, of the Constitution of Texas, we think we may confine our inquiry to a consideration of whether there is any conflict between the statutes in question and one or both of said constitutional provisions. As to the cited constitutional provisions, the one provides that: "county attorneys shall represent the State in *all cases* in the District and inferior courts in their respective counties." (Italics ours.) The other, that: "The Attorney General * * * shall represent the State in all *suits* and *pleas*.in the Supreme Court of the State in which the State may be *a party*." (Italics ours.)

■ There would seem to be at least two good reasons why there can be no conflict between the statutes in question and either of these provisions of the Constitution. In the first place, the Legislature, by the provisions in question, having assumed to declare who may contest elections and who shall, or may be, contestee (limiting consideration to the character of elections to which said statutes purport to apply), has not provided that the state shall be a party, either contestant or contestee. In the second place, said constitutional provisions prescribing the duties of the county attorney and Attorney General can have no application to election contests, since they are not cases, suits, or pleas within the meaning of said constitutional provisions.

In the City of Goose Creek v. Hunnicutt, 120 Tex. 471, 39 S.W.(2d) 617, 618 (see, also, City of Goose Creek v. Hunnicutt, 118 Tex. 326, 15 S.W.(2d) 227), the court, answering a certified question whether Hunnicutt, "because of his being a resident voter of the city, and a property taxpayer therein, can maintain the suit brought by him" (a contest of election to determine whether the city would adopt the home rule provisions of the Constitution and statutes), declared that: "The Legislature has no power, under our Constitution, to authorize a private citizen to represent *the state in such suit*." This was preceded by the statement that "The election for incorporation, therefore, cannot be contested except by the state through its proper officers." (Italics

ours.) It must be admitted that if this is necessarily to be regarded as deciding that the state must be a party contestant in any contest "of an election held for any other purpose than the election of an officer or officers;" or (what is the same thing) that the Constitution denies to the Legislature the power to authorize the contest of such elections, except by the state as contestant, then there would seem to be no escape from the conclusion that said articles 3069 and 3070 are unconstitutional and void. By said provisions the Legislature has declared who may be contestant and contestee and the state is not named as either of them. These statutes provide that the *contestant* may be "*any resident*" or "any number of * * * residents" of "any county or *part of a county* or precinct of a county" or "any incorporated city, town or village" in which any election of the character in question is held. (Italics ours.) They provide that the contestee shall be the "county attorney of the county, or if there is no county attorney, the district attorney of the district, or the mayor *of the city, town or village, or the officer* who declared the official result of said election, or one of them, as the case may be." If the Constitution requires that the state be the contestant, then the Legislature having to the contrary provided that an individual or individuals shall be contestant, its act is void. Since no contention could be made that any self-executing provision of the Constitution makes the state a party contestant in the absence of legislative enactment, the result would be a total lack of authority in any one in this state to contest an election of this class. Odell v. Wharton, supra. The statutes in question plainly evince the legislative purpose, we think, that the general or public interest, if any such be involved in an election contest (which is seriously to be doubted), is to be represented, not by the contestant, but by the contestee. Otherwise, why was it provided that "any resident" or "any number of * * * residents" might be contestant but that one or more public officers, including among the number the county and district attorneys, shall be named the contestee? If the state must be a *contestant,* it would undoubtedly be representing the public or general interest, if either party was representing such interest. Then for this additional reason the statutes would be void; since they provide that the public or general interest, if any, is represented by the *contestee.*

In this case the county attorney is contestee. Any public interest that the state could represent as a party to the action, the county attorney may, and no doubt will, represent as county attorney. Unfortunately, however, that fact cannot relieve the statutes from the vice of unconstitutionality, for if the Constitution requires that the state be contestant, and therefore not contestee, we would still have the Constitution providing one thing and the statutes providing another and different thing, and hence, a conflict between them. If the whole question is not determinable by the proposition that an election contest is not a *suit* or *case,* then certainly we think the Legislature could not validly authorize a county attorney to be an adverse party to the state, which the Constitution requires him to represent in all cases in which it is a party. Maud v. Terrell, 109 Tex. 97, 200 S.W. 375.

In our view, those having the most certain and definite interest in an election like this, and, therefore, in a contest thereof, are the voters themselves. Such interest gives them the right to have the true result of the election finally declared, regardless of the result at first actually declared. It makes no difference, as we see it, whether such be a legal right or a political right. Ashford v. Goodwin, 103 Tex. 491, 131 S.W. 535, Ann.Cas.1913A, 699. According to the authority cited, the district court has jurisdiction of either, at least, and certainly so, when involved in an election contest.

Speaking of the interest of voters, the late Judge Fly said: "The judgment [in an election contest] would directly affect him either in sustaining or setting aside his vote, the right of suffrage being considered one of the most sacred rights held and enjoyed by freemen, and worth immeasurably more than dollars and cents. * * * Every voter * * * is interested in sustaining his vote whenever it is attacked, and to that extent he is an interested party." Bostrom v. Duffield (Tex.Civ.App.) 28 S.W.(2d) 610, 611.

The statutes involved in Ex Parte Towles, supra, provided for the contest of a county seat election. It provided that: "*Any* legal *voter* of the county may contest the result of said election." (Italics ours.) The county court (then constituted similarly to the present commissioners' court) was given jurisdiction over such a contest. The fault with the law was that it undertook to give

the right of appeal to the district court, which, by reason of certain constitutional provisions prescribing the jurisdiction of that court, the Legislature, it was held, could not do. The jurisdiction of the county court, as we understand it, was sustained but the whole provision was declared void because, as the court said, it could not be presumed that the Legislature would have enacted the valid part without the (invalid) provision for appeal. Regarding the nature and purpose of the law, however, the court said:

"It was the obvious intention of the Legislature, in the passage of this law, to make the change of a county-seat to depend, at the instance of any voter of the county who might take the proper steps, upon the judicial determination of the District Court, by a trial of the matters involved in the election de novo, the same as though it had never been tried in any other tribunal, and also to give the right of appeal to said voter, if he failed, to the Supreme Court. It is provided, that 'any legal voter of the county who may feel himself aggrieved by the decision of said County Court may appeal said matter to the District Court of the county.' * * * by it [the statute] they [the Legislature] determined to give to the dissatisfied voter, to any one of them in the county, a different remedy, [from former remedies or lack of remedies] by which he should be entitled to have the judgments of the District and Supreme Courts upon the merits of the contest, before there should be any change of the county-seat. * * *

"The county-seat of a county, like the county itself, is a part of the political and civil divisions of the State. It is provided for, and its locality determined, for the public convenience of the citizens in the transaction of their public business, especially for the holding of the courts, and for the location of the public offices in and for the county. Hence, this law gives to the citizen, as a legal voter residing in the county, a voice in determining its locality, and a right to take action, by virtue of his being a voter alone, to secure a proper determination of an election held for that purpose. This right, thus conferred, has no reference to his property or pecuniary interest that may be dependent upon its locality. The law says 'any legal voter of the county may contest the result of said election,' etc. It is immaterial what his pecuniary interests are, or where they are situated, or what they amount to. * * * His right is the same,

whether he votes in the election or not. It is simply a right or privilege to go to the polls and to enter the courts as a voter to participate in determining for the government, the locality of one of its civil and political divisions, the county-seat of his county." (Italics ours.)

The conclusion is irresistible that had the district court then possessed appellate jurisdiction of election contests, as it now has original jurisdiction, the validity of the law with its purpose as set forth above would have been fully sustained. In fact, within the next few years the judges of the Supreme Court became so impressed with the need of a valid law enabling voters to contest such elections for illegality and fraud that they came to doubt the correctness of their decision in Ex parte Towles, supra, and the other cases holding that the courts were without jurisdiction. In City of Ft. Worth v. Davis, 57 Tex. 225, Judge Gould said: "It may most appropriately be asked how, under the decisions of this court, can a tax-payer contest the result of an election, or obtain a revision of the action of the tribunal entrusted by law with the determination of that result. Ex Parte Towles, 48 Tex. 413; Williamson v. Lane, 52 Tex. [335], 336. Referring to my dissenting opinions in those cases, I am authorized to say for the court, and each member of the court, that, notwithstanding those decisions, we regard the question of the validity of the various provisions in the Revised Statutes for contesting elections as still an open question in this court. If, indeed, elections cannot be contested in the mode provided by the legislature, and if the citizen is left in many cases powerless to institute such a contest, or at least uncertain how and before what tribunal to do so, the rights and interests involved are so vital, and the danger of gross and irremediable wrong so great, that this court may with propriety re-examine its decisions, supposed to lead to such results." (Italics ours.)

The necessary jurisdiction was supplied by constitutional amendment; and by subsequent legislation, including the provisions in question, adequate procedure was prescribed.

One of the brightest legal minds that has made contribution to the jurisprudence of this state (in the opinion of this writer) had occasion to express the views of his court on the nature of election contests and who was authorized to bring such actions, as follows: "Under the present law, passed

in view of the constitutional amendment, rules of procedure are provided, and the proceedings are cognizable in the district courts. But it does not follow that the proceedings have lost their distinctive character as political proceedings rather than *suits*. The amendment to the Constitution having been adopted to supply the want of a judicial tribunal in which such controversies might be heard, and having been prepared and adopted in view of the decisions in which the proceeding had been classified, the term must be held to have been used according to its accepted and adjudicated meaning. The action retains its nature as first defined. It may be brought in cases where neither an office nor its value is in issue. *The plaintiff need have no greater interest than that of any other voter.* The defendant may be a mere nominal party, without interest and without concern as to the result. * * * The absolute necessity for the speedy determination of such controversies has long been recognized." Robinson & Watson v. Wingate, supra.

On application for writ of error, the Supreme Court in a short opinion by Judge Williams affirmed the judgment of the Court of Civil Appeals, among other things, saying: "We are satisfied, both upon principle and authority, of the correctness of the views which prevailed in the Court of Civil Appeals, and therefore refuse the application for writ of error." Robinson & Watson v. Wingate, 98 Tex. 267, 83 S.W. 182. Here was full recognition of the right of a *voter* to contest a local option election and thus prevent or sustain, as the case may be, the coming into existence of a governmental status, and, at the same time, the denial of the existence of any legal right to complain of the consequences of such status after it had come into existence.

In Hamilton v. Davis (Tex.Civ.App.) 217 S.W. 431, 434, the court said of a taxpayer's and qualified voter's suit for injunction: "Appellant has a complete remedy provided by statute for the *only injury which he can suffer* by illegal votes being cast against him. That remedy is by contesting the election." (Italics ours.)

No statutory provision for an election contest, purely and only as such, so far as we have been able to find, has ever purported to vest the right or power to bring such action in any other than a citizen resident or voter.

In view of the foregoing, it is by now apparent that the most delicate and difficult question in this case is to determine what effect should we, as a subordinate court, give to the decision in City of Goose Creek v. Hunnicutt, supra. It is apparent that in that decision the court assumed as correct these two propositions: (1) That a contest of an election to determine whether a city would adopt the home rule provisions constituted an attack upon the incorporation of the city. (2) That an election contest as provided for in said articles 3069 and 3070 is an action or proceeding constituting a *case* within the meaning of the term "all cases" as used in Const. art. 5, § 21, and a *suit* within the meaning of the term "all suits and pleas," as used in Const. art. 4 § 22.

There is no indication in the opinion that the court actually considered and determined these propositions, or did more than merely assume their correctness. Should propositions, the correctness of which are apparently only assumed and certainly not expressly decided in an answer of the Supreme Court to a certified question, be regarded by the Court of Civil Appeals as a conclusive determination of such propositions? That seems to be precisely the question this court must determine in this case. We have found no certain guide to a correct conclusion. Some aid seems to be afforded by a consideration of the rules and principles which the Supreme Court has from time to time declared shall govern the scope and effect of its answers to certified questions. Discussions of these will be found in the following cases: Clary v. Hurst, 104 Tex. 423, 138 S.W. 566, 567; Dickson /v. Strickland, 114 Tex. 176, 265 S.W. 1012; Koy v. Schneider, 110 Tex. 369, 218 S.W. 479, 221 S.W. 880, 905; Darnell v. Lyons, 85 Tex. 455, 22 S.W. 304, 960; State v. Post, 106 Tex. 468, 169 S.W. 407. "It will be understood that our answer," said Judge Ramsey in the case first cited above, "will relate solely to the very question presented, and that neither by *implication nor otherwise* are we to be understood as expressing any opinion upon *any other question which may arise from the facts stated.*" (Italics ours.) There arises from the facts stated in City of Goose Creek v. Hunnicutt, supra, *by implication,* the supremely important question of the constitutional validity of R.S.1925, arts. 3069 and 3070; a question not expressly determined in that case. *As the basis for the correct*

determination of that question there also arises from the facts *by implication* these two other questions, namely: (1) Is the statutory election contest purportedly authorized by said articles 3069 and 3070, an attack upon the validity of the incorporation of a municipal corporation or quasi municipal corporation? (2) In determining a question involving the constitutional validity of statutes, must an election contest of the character provided in articles 3069 and 3070 be construed to be a *case* or a *suit* within the meaning of Const. art. 5, § 21 and article 4, § 22, if, to do so, the statutes must be held unconstitutional, but otherwise may be sustained? In our humble opinion, the decision in the Hunnicutt Case should not under the circumstances stated, and the spirit and reason of the decisions above cited, be regarded as conclusive of the invalidity of said statutes.

When the court in the Hunnicutt Case said, "the election for incorporation therefore, cannot be contested, except by the state through its proper officers," what rule or principle did the court have in mind and thus assume was applicable to a statutory election contest? Undoubtedly it was the same as that so well stated, in general terms, in City of El Paso v. Ruckman, 92 Tex. 86, 46 S.W. 25, 26, as follows:

"The rule is well established that when the creation of a public corporation—municipal or quasi-municipal—is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a *collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the state, or by some individual under the authority of the State,* who has a special interest which is affected by *the existence of the corporation."* (Italics ours.)

For examples of the application, in Supreme Court cases, of this rule or principle, see Mesquite Ind. School Dist. v. Gross, 123 Tex. 49, 55, 67 S.W.(2d) 242; City of Tyler v. Tyler, etc., Loan Ass'n, 98 Tex. 69, 75, 81 S.W. 2, 4; Parks v. West, 102 Tex. 11, 111 S.W. 726, 729; Crabb v. Celeste Ind. School Dist., 105 Tex. 194, 146 S.W. 528, 39 L.R.A.(N.S.) 601, Ann.Cas.1915B, 1146; Kuhn v. City of Yoakum (Tex.Com.App.) 6 S.W.(2d) 91; Graham v. City of Greenville, 67 Tex. 62, 2 S.W. 742; Brennan v. City of Weatherford & Bradshaw, 53 Tex. 330, 37 Am.Rep. 758; Ex parte Keeling; 54

Tex.Cr.R. 118, 121 S.W. 605, 130 Am.St. Rep. 884. The above decisions, together with many more to the same effect, establish, we think, these two propositions: (1) That the attack upon the validity of a de facto municipal corporation which is prohibited is a collateral attack. (A statutory election contest is a direct attack upon an election and not an attack, direct or collateral, upon the legal existence of a de facto municipal corporation in which the election is held.) (2) That a direct attack upon the validity of the incorporation of a de facto municipality which only the state is authorized to make is a *suit* within the meaning of the term "suits, complaints or pleas" used in Const. art. 5, § 8, of which the district court has had jurisdiction since the adoption of the Constitution in 1876, and long before under other Constitutions. That a suit in such sense does not include a statutory election contest is, in addition to all the authorities before cited in this opinion, conclusively demonstrated by the fact that while the district court has always had jurisdiction of all suits, complaints, and pleas involving $500 or over, it did not have jurisdiction of statutory election contests until the 1891 amendment, and even then not because an election contest was a suit, complaint or plea.

When the Legislature under a grant of power by the Constitution provides by law that a municipality shall come into existence, or an existing municipality shall have increased or diminished powers, all dependent upon the result of an election, the de facto existence of the incorporation, or of the increased or diminished powers, presuppose a noncontested election, or one which, being contested, is adjudged valid. In such cases, a valid election is analogous to a valid law whereby a corporate existence or added or diminished powers of a municipality are conferred directly by act of the Legislature without provision for any election. In Parks v. West, supra, certain citizens and property owners brought the suit for injunction to restrain the issuance of bonds and the levy of taxes based upon the asserted invalidity of a county line school district. The defendants invoked the rule or principle of law above quoted from City of El Paso v. Ruckman, supra. The court said: "But it is urged that the attack of plaintiffs is based upon the corporate existence of the Mertens School District in a *collateral proceeding* and that the validity of such incorporation can be ques-

272

tioned only by the state in a *direct proceeding. Such a proposition is often applied in favor of de facto corporations* and it is sometimes difficult to determine its exact scope and application. El Paso v. Ruckman, 92 Tex. 86, 46 S.W. 25; Brennan v. City of Weatherford & Bradshaw, 53 Tex. [330], 331, 37 Am.Rep. 758; Graham v. City of Greenville, 67 Tex. 62, 2 S.W. 742. * * * It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist and 'that the rule is the same where there is only an unconstitutional law.'" (Italics ours.)

The court recognized that the rule was not applicable unless the municipality had acted as a "quasi corporation sufficiently to have acquired a de facto existence," and, in the language first quoted, seems to approve the proposition that there must be a valid law under, and in accordance with, which the municipality could exist, or possess the powers claimed. When, in part the will of voters, to be determined by an election, is given the force and effect of law, to bring into existence a municipality, or to define its powers; it seems clear to us that, in no proper sense, could an authorized direct attack upon the validity or particular result of the election, be regarded as an attack, either direct or collateral, on the validity of the incorporation or the exercise of powers having a de facto existence. Certainly one of the purposes and functions of a statutory election contest is to enable residents to prevent such de facto existence or exercise of powers. This, we think, is clearly shown by previous quotations in this opinion from the decisions.

In the instant case, the election, whatever its result, could not alone bring into existence the quasi municipality (the consolidated county line school district) either de facto or de jure. Another election in the Hobbs Independent School District, resulting in favor of consolidation, was necessary. How, then, could a direct attack upon the validity of the election in Camp Springs School District by means of a purportedly authorized contest of the election be regarded as an attack on the proposed consolidated district, then possibly, if not certainly, not in existence? By what process of reasoning could such proposed consolidated district be held, at the time this action was begun, to have even a de facto existence? Plainly it would seem it could

have no de facto existence, even if contestants in this action should be adjudged entitled to maintain same but failed to have a different result declared, unless in the meantime the Hobbs District voted to consolidate and thereafter there was organization and at least some operation as a consolidated district.

The facts of this case afford a good opportunity to examine intelligibly the question of who really has an interest in such elections, and, therefore, in contests thereof. Let us suppose that in the Camp Springs District the declared result of the election, as was the case, was "For consolidation 48 votes" and "Against consolidation 46 votes." Let us further suppose that contemporaneously, or thereafter, in an election in the Hobbs District the declared vote was for consolidation 46 votes and against consolidation 48 votes. If both elections were contested could the state consistently occupy the position of contestant in both? If so, in one it would be endeavoring to bring the consolidation into existence, and in the other to prevent that result. To our minds that alone should be convincing that the state, as such, has no interest in said elections or actions to contest same, and especially no interest as contestant. The state's interest is not in the legality or illegality of an election, but the legality or illegality of a de facto incorporation, which, however, may under some circumstances involve an inquiry into the legality of an election. It is difficult for us to see that interest in an election of this kind is not wholly confined to those who vote for and against a submitted proposition. That interest and the rights involved are, we think, political, and not strictly legal. The interest of those who vote for a proposition is adverse to the interest of those who vote against the same proposition. The common right of all is that the election be fairly conducted and that the declared result be not brought about by fraud or illegality. These interests and rights are those of which the district court had no jurisdiction until the 1891 amendment to article 5, § 8, of the Constitution. These are the rights and interest which the Legislature has provided by the statutes in question may be asserted and enforced in election contests.

If the declaration that "The Legislature has no power under our Constitution to authorize a private citizen to represent the State in such suit" is to be understood as

exactly equivalent to the proposition that the Legislature has no power under our Constitution to authorize a private citizen to contest an election held for purposes other than the election of an officer or officers, then it becomes pertinent to inquire what other or different constitutional provisions do empower the Legislature to authorize a private citizen to contest an election of officers? We take it for granted, no court ever having held to the contrary so far as we know, that the statutory provisions (Rev.St.1925, art. 3041 et seq.) are valid which authorize a defeated candidate to contest an election in which his opponent has been declared elected. Such a candidate has three options: He may bring such statutory proceeding; he may bring a direct suit in his own name; or, if he can prevail upon the county attorney or district attorney to do so, he may bring the action of quo warranto, the very definition of which is a suit by the state. The only constitutional provision, so far as we are advised, relating to the subject, is that introduced by the 1891 amendment of article 5, § 8, which added to the jurisdiction of the district court the subject of "election contests." This constitutional provision was held to be not self-executing. Odell v. Wharton, supra. The Legislature has purported at least to vest the right to contest an election for officers in "any person" (R.S.1925, art. 3042); an election for any other purpose than the election of an officer in "any resident * * * or number of * * * residents (Id. art. 3069); an election on constitutional amendments (special) in "any citizen of this State who is a qualified voter" (Id. art. 3071); and a primary election in "candidates" (Id. art. 3147). The power of the Legislature to authorize the contest of primary elections within district court jurisdiction was sustained in Ashford v. Goodwin, supra.

The only constitutional inhibition on the power of the Legislature to authorize any person to contest any kind of an election, it occurs to our mind, is the implied inhibition against vesting jurisdiction to try such a proceeding in any other tribunal than the district court. Ashford v. Goodwin, supra. Of course, if the statutes in question in purporting to authorize an individual to contest an election had said that it should be by an action of quo warranto, there would in that case be presented an ambiguity in the statute calling for application of the rules of statutory construction. To such a situation the decisions in Staples v. State ex rel. King, 112 Tex. 61, 245 S.W. 639 and Maud v. Terrell, supra, would be applicable and controlling as authority. The Legislature, by the statutes in question, has not only not limited the right of a resident to contest an election of the kind in question to an action of quo warranto, the very definition of which is a suit by the state, but has not purported to authorize either a resident or the state to contest such an election by an action of quo warranto. In our opinion, since a statutory election contest is a special proceeding and only available according to the terms of the statutes which confer the authority, the state, as such, cannot maintain it for the all sufficient reason that the Legislature has not so provided. This view is in nowise inconsistent with the long-recognized right of the state in a *suit* invoking the strictly judicial powers of the court, an action of quo warranto (not the special statutory proceeding), to incidentally assert the invalidity of an election, and, therefore, in a sense contest an election.

It is our conclusion that the judgment of the trial court dismissing the contest should be reversed, with directions to reinstate same. It is accordingly so ordered.