McFARLANE et al. v. WESTLEY et al.
(No. 7146.)

(Court of Civil Appeals of Texas. Galveston. April 17, 1916. Rehearing Denied May 11, 1916.)

1. ELECTIONS ⚵⇒270 — CONTEST — JURISDICTION.
Under Const. art. 5, § 8, providing that the district court shall have original jurisdiction of contested elections, on the principle of "inclusio unius est exclusio alterius," jurisdiction to determine an election contest cannot be conferred by the Legislature upon any other court or tribunal.
[Ed. Note.—For other cases, see Elections, Cent. Dig. § 247; Dec. Dig. ⚵⇒270.]

2. DRAINS ⚵⇒14(1) — DRAINAGE DISTRICT — ELECTION CONTEST — JURISDICTION — STATUTES.
Under Const., art. 5, § 8, touching jurisdiction of contested elections, and Rev. St. 1911, art. 3050, providing that contested elections for other purposes than the election of officers shall be tried by the district court in the county where the election was held, etc., the district court of a county had jurisdiction of contest of an election for the establishment of a drainage district, despite Acts 32d Leg. c. 118, § 3, providing for contest of the creation of such a district at hearing of the petition therefor before the county commissioners.
[Ed. Note.—For other cases, see Drains, Cent. Dig. § 5; Dec. Dig. ⚵⇒14(1).]

3. STATUTES ⚵⇒158—REPEAL BY IMPLICATION.
Repeals of a statute by implication are not favored.
[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. ⚵⇒158.]

4. DRAINS ⚵⇒14(1) — DRAINAGE DISTRICT — ELECTION CONTEST—PARTY PLAINTIFF—STATUTES.
Under Rev. St. 1911, art. 3077, providing that any resident of a county may contest an election, held for any other purpose than the election of an officer, in the district court of such county, and Acts 32d Leg. c. 118, § 24a, providing that no suit can be brought in any court contesting the validity of the formation of any drainage district except in the name of the state, a resident of a county can contest in the district court the validity of an election on the formation of a drainage district; section 24a not requiring suit to contest the election to be brought in the name of the state.
[Ed. Note.—For other cases, see Drains, Cent. Dig. § 5; Dec. Dig. ⚵⇒14(1).]

5. DRAINS ⚵⇒14(1) — DRAINAGE DISTRICT — ELECTION — RIGHT TO VOTE — AFFIDAVIT — STATUTE.
Where a resident and taxpayer of a proposed drainage district came to the place of holding an election on the question of its formation, and was refused the right to vote by judges who denied that he was a resident of the proposed district, and who would not have permitted him to make the affidavit of residence, required by Acts 32d Leg. c. 118, § 15, had he offered to do so, and would not have permitted him to vote, had he done so, it was unnecessary for such voter to offer to make affidavit of residence to complete his right to vote.
[Ed. Note.—For other cases, see Drains, Cent. Dig. § 5; Dec. Dig. ⚵⇒14(1).]

6. DRAINS ⚵⇒14(1) — DRAINAGE DISTRICT — ELECTION—RIGHT TO VOTE—STATUTE.
Where one seeking to vote at an election on the question of forming a drainage district, upon being questioned, showed the judge that he did not know whether he resided within the proposed district, and therefore could not have made the affidavit of residence, required by Acts 32d Leg. c. 118, § 15, though as matter of fact he was entitled to vote, the refusal of his ballot was not such a wrong as he can complain of, or such as required the election to be set aside.
[Ed. Note.—For other cases, see Drains, Cent. Dig. § 5; Dec. Dig. ⚵⇒14(1).]

7. DRAINS ⚵⇒14(1) — ORGANIZATION — ELECTION—INDICATION OF CHOICE.
Where a voter at an election on the question of the formation of a drainage district, the ballot being typed "For the drainage district,

---

and the issuance of bonds and levy of taxes in payment therefor," and "Against the drainage district, and the issuance of bonds and levy of taxes in payment therefor," did not erase either of the propositions, but wrote, between the two, "Against Dres.," his ballot was not a sufficient expression of his intention to entitle his vote to be counted, and was properly refused consideration.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 5; Dec. Dig. ⊗═══14(1).]

Appeal from District Court, Ft. Bend County.

Proceeding to contest an election by J. C. Westley and others against W. I. McFarlane and others. From a judgment sustaining the contest and ordering a new election, contestees appeal. Reversed, and judgment rendered in favor of the contestees.

Baker, Botts, Parker & Garwood, Cooper & Merrill, and J. P. Parris, all of Houston, and C. I. McFarlane, of Richmond, for appellants. D. R. Peareson, of Richmond, for appellees.

McMEANS, J. Under the orders of the commissioners' court of Ft. Bend county, an election was held in drainage district No. 2 of Ft. Bend county, Tex., on December 10, 1914, to determine whether or not said drainage district should be established, and the bonds of said district issued, and tax levied in payment therefor. Said election was held by F. O. Keir as presiding judge (so appointed by the commissioners' court), assisted by George H. Moore, judge, and J. C. Westley. On December 16, 1914, in due order, the commissioners' court of Ft. Bend county canvassed the returns of said election, and declared the result to have been 30 votes for and 14 votes against the drainage district, and the issuance of bonds and the levy of tax, and declared said election carried in favor of said propositions.

This proceeding is a contest of said election, instituted in the district court of Ft. Bend county, Tex., by J. C. Westley, Frank Brix, and J. J. McKeever; said contestants giving notice of their intention to contest the election within 30 days after the return day of said election, which notice was in writing and was delivered to the county attorney of Ft. Bend county, to wit, Thos. B. Peareson, within said 30 days after the official result of said election had been declared by the commissioners' court. Such notice was also served within said time upon W. I. McFarlane, county judge of Ft. Bend county, and such notice was also served upon W. L. Davidson, assistant county attorney of said county within said 30 days. There was also at the same time delivered with said notice to each of said parties respectively a written statement of the grounds on which contestants relied to sustain such contest. A copy of the notice of contest and of the statement of contestants were filed with the district clerk of Ft. Bend county.

Thos. B. Peareson, as county attorney for Ft. Bend county, within 10 days after being served with said notice and statement of contest, served upon the attorney for contestants his reply thereto, and a copy thereof was filed with district clerk of Ft. Bend county on January 21, 1915. The reply of said county attorney consisted of a general demurrer and a general denial, in form sufficient to require contestants to prove the allegations of their notice and statement. W. I. McFarlane, as county judge of Ft. Bend county, served his reply to said contest upon contestants' attorney within 10 days after service upon him of the notice and statement of contestants; said reply consisting of a general demurrer, a number of special exceptions, and special denials of all allegations in contestants' notice. His first amended answer was filed on April 26, 1915, and in so far as questions involved are concerned is substantially the same as the original answer. The statement of the grounds of contest of contestants, which was signed by J. C. Westley, Frank Brix, and J. J. McKeever and duly sworn to, among other allegations contained the following:

"Contestants are resident citizens of Ft. Bend county, Tex., and at the time of the holding of said election and now own property in the said proposed district subject to taxation. The contestant J. C. Westley, at the time of the holding of said election, resided within the limits of said district, and he now resides therein, where he has resided for more than 10 years consecutively next before this date. Contestant J. J. McKeever is the husband of Mrs. May Fenn McKeever, who at the time of the holding of said election, and now, was and is the owner of property situated within the limits of said proposed district, which was then and is now subject to taxes proposed to be levied by and in behalf of said district. F. O. Keir, the presiding judge of said election, and George H. Moore, one of the assistant judges, prevented Gus Johnson and Allen Poseley from casting their votes and ballots at said election; they holding and deciding that neither of said parties were entitled to vote at said election, on the ground that said voters did not live within the limits of said proposed district. The said Allen Poseley at the time of said election did reside within the limits of said proposed district, where he had resided for more than two consecutive years before said election, and did in proper manner within the proper time offer to vote at said election, while the said election was being conducted, and while the polls were open for the purpose of receiving votes and ballots in reference to said election; but the said election judges refused to receive the vote of the said Poseley, and the said Poseley did not vote at said election, and his ballot was not counted in said election. The said Poseley then and there was a legal and qualified voter in said election, he then owning real and personal property in said district subject to taxation, and he had within the time prescribed by law paid to the tax collector of Ft. Bend county, Tex., the poll taxes for the year 1913, and also for the year 1914. The said Poseley was against the establishment of said drainage district, the issuance of bonds, the levy of tax, and would have voted against the establishment of the district, the issuance of bonds, and the levy of taxes in payment therefor; but as aforesaid, he was prevented by the unlawful and wrongful rulings and actions of said election officers, and was not permitted to and did not vote at said election. The said Gus Johnson at the time of said election did

reside, and had for more than two consecutive years next before said election, and did in proper manner and within the proper time offer to vote at said election, while the said election was being conducted, and while the polls were open for the purpose of receiving votes and ballots in reference to said election; but the said election judges refused to receive the vote of the said Johnson and the said Johnson did not vote at said election and his ballot was not counted in said election. The said Johnson then and there was a legal and qualified voter in said election, he then owning real and personal property in said district subject to taxation, and he had within the time prescribed by law paid to the tax collector of Ft. Bend county, Tex., the poll taxes for the year 1913, and also for the year 1914. The said Johnson was against the establishment of said drainage district, the issuance of bonds, and the levy of taxes, and would have voted against the establishment of the district, the issuance of bonds, and the levy of taxes in payment therefor; but, as aforesaid, he was prevented by the unlawful and wrongful rulings and actions of said election officers, and was not permitted to and did not vote at said election. The voter L. J. Jones, who is Lewis Jones, voted at said election against the creating of said drainage district, the issuance of bonds and the levy of said taxes; but his said vote was not counted by the said election officers, and is not taken into consideration in the returns made thereof. The said Jones at the time of said election had then resided in said district for more than two consecutive years, owned property therein subject to taxation, paid his poll taxes to the tax collector of Ft. Bend county prior to February 1, 1913, and was a legal and qualified voter in said election, and his ballot and vote should have been counted against the said proposition. Contestants allege that the failure on the part of said election officers to permit the said Allen Poseley and said Gus Johnson to vote in said election, and the failure to count the vote of the said Jim Holland in said election, renders said election void and of no force. If said voters had been permitted to vote, and if their votes had been counted against the creating of said district, the issuance of bonds, and the levy of taxes, there would have been more than one-third of the votes in said election against the establishment of said district, the issuance of bonds, and the levy of taxes, and less than two-thirds of the voters in favor of said propositions, and said propositions would have failed to carry, and the judgment of the commissioners' court would have declared such failure, and refused to establish the said district, and failed to have authorized the issuance of bonds and levy of taxes."

The court overruled the general demurrers of McFarlane, to which exception was taken. The court sustained the special exceptions of McFarlane, as contained in the second and fourth paragraphs of his amended answer, to the effect that Brix and McKeever could not maintain the contest, because neither resided within the limits of the proposed district, and dismissed them from the suit, to which ruling the contestants excepted. A trial was had before the court without a jury, and resulted in a judgment that the election was void, because Poseley and Johnson were illegally prevented by Judges Keir and Moore from voting at said election; it appearing that they would have voted against the propositions, and in such event more than one-third of the votes would have been against the propositions.

At the request of Judge McFarlane, the court filed its findings of fact and conclusions of law, which are too lengthy to be set out in this opinion, but which, we think, are correctly summarized by appellants in their brief, as follows:

"(1) That the contest was properly brought within the time allowed by law.

"(2) That the contestant J. C. Westley possessed the legal qualifications necessary to enable him to maintain the contest, but that his joint contestants did not.

"(3) That the answer of the contestee McFarlane was properly served and filed within the time allowed by law.

"(4) That the election under investigation was properly and legally ordered, due return thereof made by the election officers, and the returns duly canvassed and the result declared by the commissioners' court of Ft. Bend county, as prescribed by law.

"(5) That the returns made by the election officers correctly showed the result of the election as held, and that no illegal votes were in fact cast.

"(6) That the election returns upon which the commissioners' court declared the result of the election were signed by the sole contestant herein, J. C. Westley, as one of the judges of said election.

"(7) That two voters, Poseley and Johnson, presented themselves at the polls on the day of the election with the intent to vote against the propositions submitted, but were told by the presiding judge that they did not live within the limits of the district and would not be permitted to vote.

"(8) That said two voters did not make or offer to make the affidavit required by law to entitle them to vote. That the voter Poseley would have made the required affidavit, if required to do so, but that Johnson did not know where the lines of the district were, and consequently could not have sworn that he lived within its limits. That neither of said voters would have been permitted to vote, had he made the affidavit required by law.

"Conclusions of Law.

"(1) That the court had jurisdiction and authority to hear the contest.

"(2) That contestant Westley was not estopped by his conduct to question the correctness of the returns signed by him.

"(3) That Poseley and Johnson should have been permitted to vote.

"(4) That, had both said voters been permitted to vote, the result would have been the opposite of that declared by the commissioners' court.

"(5) That the election was therefore void, and a new one was ordered."

By his first assignment of error appellants contend that the district court was without jurisdiction to hear and determine the contest of an election for the establishment of a drainage district. The contentions advanced by the propositions under the assignment, in effect, are that, the Legislature having failed by the terms of the act providing for the creation of drainage districts to confer on the district court jurisdiction to determine contests of elections held under the provisions of the act, such jurisdiction cannot be exercised by said courts, unless conferred by the terms of the general law governing election contests, and that the general law under which this contest was brought cannot be construed to confer jurisdiction on the district court to determine such a contest, for the reason that such a construction would be in conflict with the terms of the special enactment by virtue of which such

election was held, which expressly excludes the exercise by said courts of such jurisdiction.

[1] Section 8 of article 5 of the Constitution provides:

"The district court shall have original jurisdiction * * * of contested elections."

On the principle of "inclusio unius est exclusio alterius," jurisdiction to determine election contests cannot be conferred by the Legislature upon any other court or tribunal. In 1895 the Legislature passed a very comprehensive act upon the subject of the contest of elections, which has been brought forward in the Revised Statutes of 1911 as chapter 8 of title 49, which, after prescribing the venue of suits for the contest of election for certain specified officials, provides by article 3050 as follows:

"Contested elections for other purposes than the election of officers shall be tried by the district court in the county where the election was held, or either of them, if there is more than one such court."

[2] The remainder of the chapter provides rules of procedure and of evidence in the trial of all election contests. In view of the provision of the article of the Constitution and of article 3050, above quoted, and the chapter referred to, we think there can be no doubt that the district court had jurisdiction in the instant case. Nor do we think that this conclusion is in conflict with the terms of the Acts of the 32d Legislature, page 245, the third section of which reads as follows:

"Sec. 3. Upon the day set by said county commissioners' court for the hearing of said petition any person whose land would be affected by the creation of said district may appear before said court and contest the creation of such district or contend for the creation of said district, and may offer testimony to show that said district is or is not necessary, and would or would not be of any public utility either sanitary, agricultural or otherwise, and that the creation of such drainage district would or would not be feasible or practicable. Said county commissioners' court shall have exclusive jurisdiction to hear and determine all contests and objections to the creation of such district, and all matters pertaining to the same, and said court shall have exclusive jurisdiction in all subsequent proceedings of the district when organized, except as hereinafter provided, and may adjourn hearing on any matter connected therewith from day to day, and all judgments rendered by said court in relation thereto shall be final, except as hereinafter otherwise provided."

Manifestly the authority here conferred upon the commissioners' court was to determine contests as to the creation of drainage districts, to pass upon the question of the necessity for their creation and whether they would be of any public utility, either sanitary, agricultural, or otherwise, and whether practicable or feasible, and not the authority so plainly conferred by the Constitution and statutes on district courts, to determine contests of elections provided for by the drainage act as a prerequisite to the establishment of a valid drainage district. But if the section could be construed as attempting to confer jurisdiction upon the commissioners' courts to hear and determine such elections, then, we think, it is in conflict with the provision of the article of the Constitution above quoted, and void. The assignment is overruled.

[3, 4] Under his fifth assignment appellant makes the contention that the contest of an election of the character in controversy can only be brought in the name of the state of Texas, by the Attorney General, on his own motion or upon the motion of some person interested therein, and for good reasons shown. This contention is based upon section 24a of chapter 118 of the Acts of 1911, providing for the creation of drainage districts, which contains this language:

"No suit shall be permitted to be brought in any court of this state contesting or enjoining the validity of the formation of any drainage district created under the provisions of this act, or bonds issued hereunder, except in the name of the state of Texas, by the Attorney General, upon his own motion, or upon the motion of any party affected thereby upon good cause shown."

It will be observed that the section does not in express terms provide that a suit to contest the *election* shall be brought only in the name of the state, nor do we think it so provides by necessary implication. The effect of the construction sought by appellant to be placed upon the language used would be to repeal by implication article 3077, Revised Statutes, which reads:

"If the contest be for the validity of an election held for any other purpose than the election of an officer * * * any resident of such county * * * may contest such election in the district court of such county."

Repeals by implication are not favored. But we do not think that section 24a can be construed as requiring a suit to contest the election to be brought in the name of the state. The language is: " * * * contesting or enjoining the *formation* of any drainage district." Bear in mind that the Legislature had already provided that contests other than the election of officers might be instituted by any resident of the county, etc. We think that when the Legislature used the word "formation," knowing that under existing law it had conferred the power of contesting elections, such as this, upon "any resident," it meant only the acts necessary to put the machinery in motion and leading up to the formation of a drainage district, and did not intend to include the contest of the election. If it had so intended, it would have been easy and most natural to say so.

The second assignment complains that the court erred in concluding as a matter of law that the voter, Allen Poseley, was wrongfully prevented from voting at said election because of the fact, as found by the court, that Poseley neither made nor offered to make the affidavit required by law to entitle him to vote. The proposition is advanced in this connection that an election will not be held void on account of the refusal of the election officers to permit a qualified voter to cast his

ballot, unless such voter has complied with all the legal requirements necessary to entitle him to vote. Section 15 of the Drainage Act requires every person who offers to vote in any election held under the provisions of the act to take the following oath before the presiding judge of the election, viz.:

"I do solemnly swear (or affirm) that I am a qualified voter of ――― county, and that I am a resident * * * taxpayer of the proposed drainage district voted on at this election and I have not voted before at this election."

There is no question that Poseley was a qualified voter and entitled to vote in the election in question. This is an unquestioned finding of the trial judge. The court further found that at a proper time Poseley presented himself at the polls for the purpose of voting, intending to vote against the pending proposition. We quote the further findings of the court on this point:

"As soon as said Poseley so presented himself the said F. O. Keir asked the voter where he lived, and the voter informed him. Thereupon the said Keir announced that the said voter did not live within the limits of said proposed drainage district No. 2, was not entitled to vote, and that he would not be permitted to vote in said election, in which decision the said George H. Moore concurred; but the said Westley said nothing after the said Keir and Moore announced their decision. The said Poseley argued the matter with the said judges, but they did not rescind their decision, but insisted that the said voter could not participate in said election, and thereupon the said voter left without casting his ballot in said election, and did not vote in said election. The said Keir and the said Moore knew the location of the residence of the said Poseley and were advised by the said Poseley of the exact place where the said Poseley lived and had lived for more than one year immediately preceding the said election. Neither the said Keir nor the said Moore offered to permit said voter to make any affidavit of any character in reference to his qualifications as a voter, but decided that the said voter was not entitled to vote, without asking or permitting the offering of any proof or affidavit touching such qualifications, *and would not have permitted said voter to make any affidavit, had he offered to do so, and would not have permitted him to vote, had he done so.* The said Poseley would have made affidavit that he was a qualified voter in Ft. Bend county, Tex., and a resident property tax payer in the proposed drainage district for the proper length of time, and that he had not voted at said election. The said Poseley was prevented from voting at said election by the said Keir and Moore."

[5] We think that the conclusion of the court attacked in the assignment cannot be gainsaid. The law does not require the doing of futile things. When, therefore, it is conclusively shown that Poseley could and would have made the affidavit, and that the officers of the election would not have permitted Poseley to make the affidavit, had he offered to do so, and would not have permitted him to vote, had he done so, it became wholly unnecessary for him to offer to do so. We think it necessarily follows that Poseley was wrongfully prevented from voting.

[6] The third assignment complains that the court erred in concluding as a matter of law that the voter Gus Johnson was wrongfully prevented from voting in said election,

for the reason that the court found as an undisputed fact that the voter did not make or offer to make the required affidavit. Johnson was a qualified voter and entitled to vote in said election, and, had he been permitted to vote, would have voted against the pending proposition. Johnson presented himself at the polling place at a proper time and offered to vote. We quote from the court's findings:

"Thereupon said F. O. Keir asked the said Johnson where he was living. The said Johnson told him the place of his residence, and that he had lived there for a period of more than six months next preceding the time of holding said election. Thereupon the said Keir announced and informed the said Johnson that he (Keir) knew where his place of residence was, that said residence was not within the limits of drainage district No. 2, that the said Johnson was not entitled legally to vote in said district on account of the fact that the said Johnson did not live within the limits of said district and had not so lived for the next six months next preceding said election, and that the said Johnson would not be permitted to vote in said election. The decision of the said Keir was concurred in by the said George H. Moore, and the said Westley said nothing after the said Moore and Keir announced their decision. The said Johnson argued with the said election officers, and told them that other voters living next to him had voted, and that he thought that if they could vote that he was entitled to vote, but that he did not know exactly where the line of the district was. Notwithstanding this, the said Keir and Moore held to their decision, and the said Johnson was not permitted to vote in said election, and did not vote thereat."

The court further found that the election officers did not request Johnson to make an affidavit showing his qualification as a voter, nor did they offer to permit him to do so, nor did they give him an opportunity to do so, and that they would not have permitted him to vote had he made the affidavit. Johnson's situation was different from that of Poseley, in that the latter knew that he lived in the proposed district, and would have so sworn, had he been permitted to make the affidavit, while Johnson did not know whether he lived in the proposed district, and could not have made the affidavit, even had the officers of the election requested him to do so. It was his duty to inform himself before he offered to vote of the boundaries of the district, and whether he lived therein and was qualified to vote, and when, upon being questioned, he showed that he did not know that he resided within the proposed district, and therefore could not have made the affidavit, had he been requested to do so, the election judges committed no wrong against him in refusing his ballot, although as a matter of fact he was entitled to vote. Certainly it was no such a wrong as he can complain of, and none such as requires the election to be set aside and another ordered.

The returns of the election, the result of which as declared by the commissioners' court was in favor of the establishment of the drainage district, etc., show that 44 persons voted therein, and that 30 favored and 14 voted against the proposition. If both Poseley and Johnson had voted, they would have

voted against the proposition, and the result would have been against the establishment of the district, etc.; and if both had been wrongfully denied the right to vote the election should have been set aside and a new one ordered. But as Johnson was not, in the circumstances detailed, wrongfully denied the right to vote, the denial being in part, at least, due to his inability to show his right to vote, the fact that he did not vote should not be taken into consideration in deciding the question here presented. If Poseley had voted, there would have been a total of 45 votes cast, of which 30 would have been in favor of and 15 against the establishment of the district, and the proposition would have carried by the requisite two-thirds majority.

For the foregoing reasons, we think that the court erroneously entered judgment setting the election aside and ordering a new one. This conclusion obviates the necessity of a discussion of the other assignments of error presented by the appellants.

[7] Appellees, by a cross-assignment of error, assail the action of the trial court in refusing to count the vote of L. J. Jones against the establishment of the drainage district. Jones was a qualified voter, and entitled to vote in said election, and intended to vote against the proposition; but his ballot was not counted either way. The reason his vote was not counted was this: There was typed on the ballot the following:

"For the drainage district, and the issuance of bonds and levy of taxes in payment therefor."
"Against the drainage district and the issuance of bonds and levy of taxes in payment therefor."

In casting his ballot Jones did not erase either of the propositions, but wrote between the two "Against Dres." We think the ballot as cast was not a sufficient expression of the intention of the voter to entitle his vote to be counted, and the court properly refused to consider it in determining the result of the election.

From what has been said it follows that the judgment of the court below, sustaining the contest and ordering a new election is erroneous, and should be reversed, and judgment here rendered in favor of the contestees; and it has been so ordered.

Reversed and rendered.