### CARTER v. WHITE.
#### No. 4159.

Court of Civil Appeals of Texas. El Paso.

Jan. 8, 1942.

B. W. Smith and Kerr & Gayer, all of San Angelo, for appellant.

Hughes, Hardeman & Wilson, of San Angelo, for appellee.

SUTTON, Justice.

This is an appeal from the District Court of Irion County. The parties are in the same attitude here as in the trial court and will be designated as there.

The suit is an election contest and involves the office of County Commissioner. It grew out of the November General Election of 1940. The judgment was for the defendant, contestee. The trial was to the court.

The defendant was on the regular Democratic ticket as the Democratic nominee. The plaintiff was a "write-in candidate." On the face of the returns the defendant was declared elected and the judgment of the court was to the same effect. There are eleven votes, which were cast for the defendant, challenged. Their invalidity is asserted because of alleged illegal assistance rendered the voters who cast the eleven ballots. There is no dispute about the facts. The court filed findings and conclusions and there is no complaint about the correctness of the findings.

A summary of the assistance as found by the court is as follows: Five of the eleven asked for information as to how to vote a "straight ticket" or a "straight Democratic ticket," and were told generally how to do it, two of whom inquired if the others

should be marked out and were told yes. One voter was unable to find the President's name on the ticket and asked how he might vote for him, which was explained to him. One was afraid he might mutilate his ballot and asked what constituted a mutilated ballot, which was explained to him. One sought information as to how to vote for or against constitutional amendments, which was explained. Another explained she had never voted at a Presidential Election, and asked for general information, and engaged in a general discussion of how to do so. One asked if the ballot is marked part way down if it would destroy the whole ballot, and was told it would not, and was shown where the independent and socialist and other candidates were on the ballot. Another stated he had never voted and asked for a general explanation of the ballot, which was done. All conversations were with and all explanations were made by election officials after which each voter then retired to the place provided for marking ballots and marked and voted the ballot according to his own wishes and intentions.

Plaintiff takes the position these matters constituted illegal assistance under the law and rendered each and all the eleven ballots void. None of the voters are within any exception of the statute authorizing assistance.

■ We think it clear from the provisions of Art. 3010, R.C.S.1925, and other provisions hereafter noticed, assistance or aid means assistance or aid in the marking of the ballot, and does not extend to and include general instructions and advice, such as given the voters here, which do not and cannot become injurious to contestant. If advice or instruction is such as would amount to assistance in marking the names of candidates on the ballot and resultant injury to contestant, then it would become illegal and render the ballot void. It cannot be presumed the Legislature intended to apply unreasonable and senseless rules in situations like this, and the courts will indulge none such.

That assistance and aid refers to the marking of the ballot is made plain by the provisions of Arts. 3008, 3012, R.C.S.1925, and article 2942a, Vernon's Ann.Civ.St.

■ We think what happened in the instant case cannot constitute illegal aid or assistance within the meaning of the statutes, because Art. 3000 provides that before the election begins an instruction card shall be conspicuously posted near each distance marker and in each voting booth or place provided for the voter to mark his ballot. The statutes are silent as to what shall be on the instruction cards, but there has been a long continued common construction of it and use of a card prepared by the Secretary of State. The use of such cards has been so common and for so long a period of time as will justify the courts in taking judicial notice of them and their contents. Printed on the instruction card are many of the provisions of our election laws, having to do with qualifications for voting, the conduct of elections, the form of ballots, penal provisions relating to violations of the election laws, and the manner of marking and voting ballots. Arts. 2981 and 3013 are found thereon. In these virtually all, if not at all, the answers may be found to the several inquiries made by the voters in the instant case. It cannot be unlawful for an election official to give in person the information the voter may find at the place where the election is held and in the booth or place where he marks his ballot. It may not be practical for the official to undertake to answer the many questions of the voters, but if an obliging one desires to do so under circumstances raising no suspicion of fraud or injury, it is his business. The law was not transgressed by the election judge correctly stating it.

■ We think the primary and chief purpose in making illegal assistance in the marking of a ballot is to prevent fraud and the substitution of the will of some other for that of the voter. If the opportunity were presented for the perpetration of a fraud on this or any other candidate was shown, we would readily disapprove. One of the first essentials in the preservation of our highly desirable political system is the safeguarding of the right of suffrage as far as can be against possible illegality, fraud and corruption. A free and uncontrolled election is essential. We think that has been had in this instance. These voters received no assistance in the marking of their ballots. Each ballot represents the free and untrammeled will of the voter.

The judgment of the trial court is affirmed.