**J. D. McJIMSEY et al., Appellants,**

**v.**

**George T. YATES et al., Appellees.**

**No. 7105.**

Court of Civil Appeals of Texas.

Texarkana.

May 5, 1959.

Rehearing Denied June 2, 1959.

LeRoy LaSalle, Carthage, for appellant.

J. E. Jackson, Carthage, for appellee.

DAVIS, Justice.

The opinions heretofore handed down in this case on February 17, 1959, and March 17, 1959, are withdrawn, and the following is here substituted therefor.

Contestants-appellees, George T. Yates, Charles Shell, W. P. Barnett, Sr., W. P. Barnett, Jr., Carl Beason and George Charles Tiller, filed suit against the County Attorney, County Judge and the Commissioners' Court in the District Court of Panola County, Texas, to contest a school consolidation election held in Panola County on April 5, 1958, on the issue of whether or not DeBerry Rural High School District No. 703 of Panola County, Texas, should be consolidated with the Elysian Fields Independent School District of Harrison and Panola Counties. Appellants-interveners, J. D. McJimsey and G. E. Lawless, intervened. Although the Elysian Fields Independent School District is situated in both Harrison and Panola Counties, the actual site of the school is in Harrison County. Elysian Fields Independent School District was not made a party to the contest and the record does not show whether or not the election was for or against consolidation in that district. There is a serious question in our minds as to the validity of the contest from the standpoint of necessary parties. It seems that if Elysian Fields had enough interest to hold an election in its district, it should have been given an opportunity to help uphold the election to protect its efforts and expenses in holding the election.

There is a conflict of authorities as to who has a right to maintain an election contest in such cases as we have before us. Some cases hold that a person contesting such an election must have a justiciable interest. See 15–B Tex.Jur. 555, Sec. 68, and authorities therein cited. In De Shazo v. Webb, Tex.Civ.App., 109 S.W.2d 264, 266, certified question answered, 131 Tex. 108, 113 S.W.2d 519, it was held that any resident citizen of a school district could contest such an election and he need have no greater right than that of a voter. This was based upon the phrase of the statute (Art. 3069, R.C.A., now Art. 9.30, Election Code V.A.T.S.,): " * * * any resident of such county, precinct, city, town or village, or any number of such residents, may contest such election in the district court of such county. * * *" It overlooks the phrase in said statute immediately following the one just quoted which reads as follows: "in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter for contesting the validity of an election for county office." If that part of the Election Code means what it says, then the person contesting such election must not only be a resident of the place where the election was held which he seeks to contest, but, also, he must come under the same rules for contesting the validity of an election for a county office, which rules are well established that a party contesting an election for county office must have a justiciable interest.

It appears that under Article 9.30, Vernon's Ann.Texas Election Code, a person must have a justiciable interest in the

matter before he is eligible to maintain such an election contest. Such is the holding in the cases of McFarlane v. Westley, Tex. Civ.App., 186 S.W. 261, error dism.; Yett v. Cook, 115 Tex. 205, 281 S.W. 837; Massay v. Studer, Tex.Civ.App., 11 S.W.2d 227, n. w. h.; and City of Goose Creek v. Hunnicutt, Tex.Com.App., 118 Tex. 326, 15 S.W.2d 227, opinion adopted and approved by Sup.Ct.

In the case of Owens v. Barham, Tex. Civ.App., 145 S.W.2d 937, n. w. h., it was held that contestants were qualified to maintain an election contest where it was alleged and proved at the time of the election that the contestants were legally qualified, resident, tax-paying voters of the district and the consolidation would increase the tax burden and inconvenience their children. This authority follows the rule that a justiciable interest must be shown.

It was held in Doherty v. King, Tex. Civ.App., 183 S.W.2d 1004, wr. dis., citing Tate v. Farmer, Tex.Civ.App., 112 S.W.2d 782, 784, n. w. h., that the majority of the members of the board of trustees could maintain an election contest on the question of consolidation because such school districts were made a body politic by Article 2748, R.C.A. But the court went on to say in Tate v. Farmer, supra, that " * * * others who joined with them as taxpayers and citizens did not have the right to contest the election for lack of justiciable interest therein, separate from the interest of the public; * * *" Although in this case one contestant is a trustee, he does not comprise a majority of the board and cannot act for the school district.

The trial court sustained the contest and the interveners have appealed.

■ Appellants have brought forward 10 points of error complaining of the action of the trial court. The 10th point complains of the action of the trial court in holding that the ballot and stub boxes should be opened and the ballots be recounted because contestants had failed to

establish by competent and material evidence that there had been sufficient illegal votes cast to alter the results of the election. In the other points, appellants complain of the action of the trial court in finding certain other voters disqualified and that such findings were against the great weight and preponderance of the evidence, or that the evidence was insufficient to support the findings of the trial court. Without detailed discussion as to the evidence relative to each voter whom the trial court found had illegally voted, we find and conclude as a fact that the evidence was insufficient to support the trial court's finding that a sufficient number of such votes complained of by appellants were illegal to have changed the result of the election. In fact, appellants admit that some votes were illegally cast which were actually legal. But we will not discuss those because it would not change our opinion here. The gist of the finding of the trial court that many of the votes cast were illegal was on the theory that the voters received unauthorized assistance in casting their ballots. In substance, the evidence on this issue was that a voter would approach the election judge and ask to have explained to him how to vote in order that his vote would express his wish and desire on the consolidation issue. The election judge, or one of his assistants, would explain to the voter that if he was in favor of the school consolidation, to strike out the word "against"; and if he wanted the school to stay as it was, then to strike out the word "for." This is not a violation of Art. 8.13, V.A.T.E.C., because it has been held, and rightly so, that the assistance referred to in the article means assistance in marking the ballot. Carter v. White, Tex.Civ.App., 161 S.W.2d 525, n. w. h. The evidence does not show that the voters whose votes were held to be illegal for receiving unauthorized assistance and the holdings complained of on appeal were assisted in marking their ballots. They were only informed how to mark their ballots in order to express their intent and desire. There is no evidence in the record

that the election judges or their helpers through such explanatory assistance caused any person to change his vote. There is no evidence in the record that the election judges illegally assisted more than two or three voters in actually marking their ballots. This was not enough to have changed the result of the election.

Appellants did not preserve for appeal any points complaining of the trial court's overruling their exceptions to the petition of the contestants. If a point or points had been preserved, they would have unquestionably been good. Under the pleadings of this case the contestants were permitted to gather the voters in at random and question their votes without any specific allegation of the illegality of casting such vote by the individual voter. Such practice will not be tolerated when a point of error is assigned to such action. A general allegation should not permit an aggrieved person to go on a fishing expedition and violate every rule of the secrecy of the ballot. Although the right to secret ballot obtains, if it has been pleaded and proved that an individual who has voted, voted illegally, such vote is a nullity and is not entitled to be considered for any purpose, and when proof of such illegality is shown the voter loses his right to secrecy. Oliphint v. Christy, Tex., 299 S.W. 2d 933.

In this case, after the court had found that many ballots had been cast illegally, he issued an order to open the ballot and stub boxes. Then, it appears that every ballot and stub in the boxes were examined, compared, and then recounted. Under the pleadings and evidence in this case, only the votes that the court found to have been cast illegally should have been taken from the ballot box. Then, after tabulating how those voters had cast their votes, deducted them from the totals as certified by the election judges and that should have constituted the recount. Neither the trial judge, this Court, nor any other court

has a right under the laws of this state to ascertain how a person voted until it has first been shown that the voter voted illegally. Markowsky v. Newman, Tex.Civ. App., 138 S.W.2d 896, wr. dis. Some irregularities were discovered after opening the stub boxes and the trial court permitted a trial amendment to eliminate those votes from the court because of the discrepancy discovered after the stub box was opened. The trial court should not have examined or permitted any stubs to be examined except those of persons whom he found had cast their votes illegally. The good citizens of those school districts who voted legally were entitled to have their votes kept secret, unless they were willing to reveal how they voted. Wood v. State ex rel. Lee, 133 Tex. 110, 126 S.W.2d 4, 121 A.L.R. 931.

We wish to point out that two other different elections were held on the same day and by the same officers. In passing upon this case we had to assume that all the testimony concerned the school consolidation election. On a more careful reflection, we have concluded that this was a rather rank assumption on our part. Some of the votes were challenged on the ground that the voter did not put his ballot or ballot stub in the proper box. There were three separate ballots and there should have been three separate ballot boxes and stub boxes. There is no way of telling from the questions and answers whether the attorneys and witnesses were talking about the ballots and the ballot stubs in the school consolidation election or either of the other two elections. If it is not shown with some degree of certainty as to which ballot or stub the witness has reference to, the vote should not be held illegal. All the ballots and ballot stubs correctly, properly and comparatively identical showed up in the ballot box and stub box of the school consolidation election. We point out further that in every instance there is no evidence that the voters whom the appellees contend received unauthorized assistance did

not possess some of the legal disabilities that would entitle them to assistance in marking their ballots. These are matters that must be proved.

The judgment of the trial court is reversed and rendered.