**Lucilla GUERRERO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–91–083–CR.**

Court of Appeals of Texas, Corpus Christi.

Nov. 21, 1991.

---

**8.** Tex.Bus.Corp.Act Ann. art. 8.02 (Vernon Supp. 1991) (emphasis added).

Charles Manning, Beeville, for appellant.

Jose L. Aliseda, Jr., Beeville, for appellee.

Before NYE, C.J., SEERDEN, J., and GERALD T. BISSETT[1], Assigned Justice.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of unlawful assistance to a voter. The trial court assessed punishment at ninety days in jail, probated for six months, a three hundred dollar fine and court costs. By four points of error, appellant complains of (1) insufficient evidence, (2) unconstitutionally overbroad and vague language in the charging statute, (3) a defective jury charge, and (4) error in the admission of evidence, and (5) improper jury argument. We affirm the trial court's judgment.

In her fourth point of error, appellant claims that there is insufficient evidence to convict her of unlawful assistance of a voter. Tex.Elec.Code Ann. § 64.036 (Vernon 1986). In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. This is true in both direct and circumstantial evidence cases. *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex.Crim.App. 1988); *Nieto v. State*, 767 S.W.2d 905, 908 (Tex.App.—Corpus Christi 1989, no pet.).

In establishing this offense, the State had to show that appellant, (1) while assisting the voter, (2) knowingly (3) suggested (4) how the voter should vote. Tex. Elec.Code Ann. § 64.036(a)(3) (Vernon 1986). Appellant was a campaign worker for Adam Gonzales, who ran for Justice of the Peace for Bee County in the 1990 election. On the day for absentee voting, appellant called at the home of Mrs. Benitez to assist her in filling out an absentee voting ballot. The Election Code allows a disabled voter to choose someone other

---

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

than her employer, employer's agent, or officer or agent of the voter's labor union to assist her in marking her ballot. *See* Tex.Elec.Code Ann. § 64.032(c) (Vernon 1986). This, apparently, was the capacity in which appellant called at the house that day. Mr. Benitez and other family members were present, but Mrs. Benitez was the only one voting at the time. Mrs. Benitez's granddaughter, Gracie Garcia, testified that she was in the room when appellant was assisting Mrs. Benitez. Garcia also testified that, while Mrs. Benitez was marking her ballot, she heard appellant tell Mrs. Benitez that, "she was going to tell them the truth ... that if they were going to vote, they should vote for Adam Gonzales." While speaking these words, appellant pointed to the candidate's name on the ballot. Garcia further stated that, soon after the ballots were marked, appellant gave Mrs. Benitez five dollars. Mrs. Benitez's daughter, Aldemira Garcia, saw the five dollars change hands, and appellant also admits to this exchange. It is undisputed that Mrs. Benitez voted for Adam Gonzales.

The State introduced testimony that this incident was discovered when, forty-five days after the election, the Bee County Sheriff's Department began an election investigation because of complaints that elderly Hispanic voters had been intimidated by election officers assisting in the absentee balloting. An investigator interviewed both Mr. and Mrs. Benitez. The interviewer asked, "Did anyone by word, sign, or gesture suggest or tell you how you should vote?" and Mrs. Benitez answered "Yes, Lucilla stated that my husband and I should vote for Adam Gonzales as we were voting."

Appellant admits pointing to Gonzales's name on the ballot, but explains that Mrs. Benitez had already decided to vote for Gonzales and had asked appellant to show her where his name was so that she could mark her choice. Neither does appellant deny giving Mrs. Benitez five dollars. She claims that it was a personal gift for the Benitez's son who is in prison.

Appellant claims that the only evidence of wrongdoing under the statute was Gracie Garcia's testimony. The State did rely heavily on Garcia's testimony, but the record also shows that other evidence corroborated her story—the Sheriff's Department report in which both Mr. and Mrs. Benitez stated appellant had told them to vote for Adam Gonzales, and all the witnesses' admission of the five-dollar exchange. In reviewing the entire record, we find that a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Sufficient evidence existed to support the jury's verdict of guilty. Accordingly, point four is overruled.

■ Appellant, in her first point of error, claims that § 64.036 of the Election Code is unconstitutionally overbroad and vague. That portion of the statute reads:

(a) A person commits an offense if the person knowingly:

(3) while assisting a voter suggests by word, sign, or gesture how the voter should vote.

Appellant concedes that it is constitutionally permissible to prohibit some expression in the area of voter assistance and quarrels only with the terms "assistance," "suggests," and the phrase "how the voter should vote." She argues that these words make the statute overbroad and vague. She gives several examples of how the statute would impose criminal liability upon persons exercising First Amendment rights. For example, it would outlaw a campaign worker promoting her candidate while providing a voter with a ride to the polls; it would prohibit family discussions of candidate choices while one family member helps another fill out her ballot; it would prohibit demonstrations on voting which utilize sample ballots. Persons engaging in these activities could be punished under this statute because they are "assisting the voter," and their words or actions could be construed as a "suggestion" of "how the voter should vote." Furthermore, appellant contends, the actor could be punished even though she renders aid to the voter at the voter's request. Such con-

duct, she claims, is protected by the First Amendment and Article I, Section 8 of the Texas Constitution, and thus, the statute is overbroad. We disagree.

■ A statute is impermissibly overbroad if, in addition to proscribing activity which may be forbidden constitutionally, it sweeps within its prohibitions a *substantial* amount of expressive activity which is protected by the First Amendment. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Morehead v. State,* 807 S.W.2d 577, 580 (Tex.Crim.App.1991); *Bynum v. State,* 767 S.W.2d 769, 772 (Tex. Crim.App.1989). We find that appellant was not engaged in protected speech.

■ The regulation of state elections is a legitimate exercise of the state police power. Tex. Const. art. 6, § 4 and art. 16, § 2 (giving the legislature the power to pass only those laws which provide for the orderly conduct of elections and ensure the purity of the ballot box). 29 C.J.S. *Elections* § 4 (1965); *see also Mitchell v. Jones,* 361 S.W.2d 224, 227 (Tex.Civ.App.—Texarkana 1962, no writ). Providing special assistance to disabled or illiterate voters is a privilege which is conferred by statute. Tex.Elec.Code Ann. § 64.031 *et seq.* (Vernon 1986); 29 C.J.S. *Elections* § 208(a) (1965). The assistance must be given in the manner prescribed by the statute, and it is meant to be mechanical only. The assistant may not inform or guide voters in the choice of candidates. *See McJimsey v.*

*Yates,* 324 S.W.2d 438, 440–441 (Tex.Civ. App.—Texarkana 1959, writ dism'd); *Carter v. White,* 161 S.W.2d 525, 526 (Tex.Civ. App.—El Paso 1942, no writ); 29 C.J.S. *Elections* § 208(a) (1965). The purpose of imposing criminal liability for illegal assistance is to prevent fraud or undue influence which could end in the substitution of some other person's will for that of the voter's. 29 C.J.S. *Elections* § 208(a) (1965).

Section 64.036 of the Election Code is just such a provision. *See Prado v. Johnson,* 625 S.W.2d 368, 369 (Tex.Civ.App.— San Antonio 1981, writ dism'd) (the purpose of the Election Code is to safeguard the purity of the ballot box ... and to prohibit error, fraud, mistake, and corruption). We find that § 64.036 of the Texas Election Code does not violate the First Amendment or the Texas Constitution.

The provisions surrounding § 64.036 limit the application of the statute so that it is not overbroad. The statute refers to "assistance" as assistance "in marking the ballot," and later provisions describe how assistance is to be rendered. Tex.Elec. Code Ann. §§ 64.031–64.034 (Vernon 1986).[2] Case law interpreting the assistance provisions of the election statutes preceding the present version has established that "assistance" means aid in the actual marking of a voter's ballot. *Carter,* 161 S.W.2d at 526; *Fuentes v. Howard,* 423 S.W.2d 420, 424 (Tex.Civ.App.—El Paso 1968, writ dism'd); *see also* Op.Atty.Gen.

**2.** § 64.031 Eligibility for Assistance

A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:

(1) a physical disability that renders the voter unable to write or see; or

(2) an inability to read the language in which the ballot is written.

§ 64.032 Persons Providing Assistance

(a) Except as provided by Subsection (c), on a voter's request for assistance *in marking the ballot,* two election officers shall provide the assistance ... (emphasis added).

§ 64.033 Reading Ballot to Voter

(a) If a voter is assisted by election officers, one of them shall read the entire ballot to the voter unless the voter tells the officer that he desires to vote only on certain offices or measures. In that case, the officer shall read

those items on the ballot specified by the voter.

(b) If a voter is assisted by a person of his choice, an election officer shall ask the voter being assisted whether he wants the entire ballot read to him. If so, the officer shall instruct the person assisting the voter to read the entire ballot to the voter.

§ 64.034 Oath

A person selected to provide assistance to a voter must take the following oath, administered by an election officer at the polling place, before providing assistance:

"I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

1987, No. JM–736, p. 3,431. The permissible acts of assistance are limited to reading the ballot to the voter and answering the voter's questions, or filling out the voter's ballot for her in its entirety. Since only these acts are allowed, the phrase "while assisting the voter" must necessarily refer only to the time period during which actual voting takes place. This reading is supported by § 64.034, which states that the election assistant's oath is to be administered "at the polling place," and by § 64.-035, which reads: "after assistance has been provided in marking the ballot, the ballot shall be folded and deposited in the ballot box by the voter...." These sections establish that the context for voter assistance is when the voter is actually marking her ballot. Title Seven of the Election Code incorporates these provisions into the procedure for assistance during absentee voting, and appellant concedes the need for, and the legitimacy of, such regulation. Tex.Elec.Code Ann. § 86.010 (Vernon 1981).

Appellant also complains of ambiguity inherent in the phrases "suggests," and "how the voter should vote." She claims that this language creates an offense if an assistant merely indicates the location of the candidate's name on the ballot at the voter's request. For that reason, she claims that the statute is overbroad because it punishes protected expressive activity, and is vague because the person of average intelligence cannot determine what actions this language prohibits. We disagree. We are of the opinion that the entire phrase, read as a whole, appropriately qualifies and defines the prohibited activity. The word "suggests" ordinarily means "to bring to the mind for consideration; propose as a possibility; to show indirectly." Webster's New Twentieth Century Dictionary 1,822 (2nd ed. 1980). Thus, in the situation where the voter has asked the location of a particular candidate's name, the assistant would not be proposing that the voter choose that candidate, nor would she be "bringing that candidate to mind" for the voter's consideration.

Appellant claims that the phrase "how the voter should vote" is overbroad and vague because the phrase may be interpreted as prohibiting the assistant from showing the voter where a candidate's name is on the ballot, even when the voter has requested such assistance. Interpreting the phrase "how the voter should vote" in the way appellant asserts conflicts with the rules of statutory construction. "How the voter should vote" must be read to prohibit influencing the voter's choice of candidate and not instructing the voter in the mechanical completion of the ballot. The reading that appellant urges would nullify all the provisions for voter assistance because the very assistance they are intended to allow would be made criminal.

■ We find that the actual language and the general context of the statute show that § 64.036 is narrowly drawn. The legislature, in permitting a qualified person to assist a disabled voter, grants a privilege. The legislature requires certain safeguards to prevent abuse and fraud. A necessary parameter that the legislature set was to forbid the assistant from "suggesting by word, sign, or gesture how the voter should vote." This language is clearly meant to primarily regulate conduct—voter assistance—not speech. It is not a broad-reaching infringement on the exercise of political speech, as appellant attempts to color it. Viewed in light of the purpose of the statute, we hold that the activity forbidden by § 64.036 is not protected by the First Amendment or the Texas Constitution. Appellant's concern that her hypothetical instances of "assistance" would be punishable conduct, insofar as they do not postulate help while the voter is actually voting, is groundless. Appellant also challenges the statute for vagueness, claiming that it fails to clearly define the conduct it outlaws, and she poses the same argument as in her overbreadth challenge. Again she claims that the words "suggests ... how the voter should vote" create an offense if an assistant merely indicates the location of the candidate's name on the ballot at the voter's request.

■ Any criminal statute may be attacked on grounds of vagueness. A stat-

ute is unconstitutionally vague if it fails to give the person of average intelligence fair notice that his contemplated conduct is forbidden. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Lewis v. State*, 771 S.W.2d 666, 667 (Tex.App.—Corpus Christi 1989, pet. ref'd). Vagueness is also a concern if the statute creates a risk of arbitrary enforcement by leaving too much discretion in the hands of officials charged with enforcing the provision. *Papachristou*, 405 U.S. at 163, 92 S.Ct. at 844. However, when a statute undergoes a vagueness challenge where no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. A defendant whose conduct is clearly proscribed by the statute cannot claim that the statute is vague as applied to others. *Bynum*, 767 S.W.2d at 774; *Sepulveda v. State*, 729 S.W.2d 954, 956 (Tex.App.—Corpus Christi 1987, pet. ref'd). The evidence shows that appellant told Mrs. Benitez how to vote. Her conduct was clearly proscribed, and, based upon the same statutory interpretation above, we find that the statute is not vague as applied to appellant. Point one is overruled.

■ In her second point of error, appellant claims that the jury charge was erroneous because it merely tracked the language of the statute and that it allowed the jury to convict appellant for conduct that was not prohibited by the statute. An overbroad statute need not be invalidated if it is susceptible to a narrowing construction consistent with its language and apparent purpose. *Morehead v. State*, 807 S.W.2d 577, 581 (Tex.Crim.App.1991). Appellant apparently argues that under *Morehead* her jury charge should have included a narrowing instruction so the prohibitive language would not be overbroad. Appellant also contends that the charge, as written, would have allowed appellant to be convicted for conduct that is not illegal under the statute. The Code of Criminal Procedure provides that any objection to the jury charge must be made in writing, or dictated to the court, before the charge

is read to the jury. Tex.Crim.Proc.Code Ann. § 36.14 (Vernon 1981). Since appellant did not object to the charge, we reverse only if any error is so egregious and created such harm that appellant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *Lewis*, 771 S.W.2d at 668. Whenever the accused claims fundamental error, the appellate court must review not only the jury charge, but also the state of the evidence and "any other part of the record ... which may illuminate the actual harm to the accused" in order to determine whether the error is so harmful that reversal is required. *Almanza*, 686 S.W.2d at 172–173. The charge read as follows:

> if you find from the evidence beyond a reasonable doubt ... that Lucilla Guerrero did ... unlawfully, while assisting Ramona Benitez, a voter, in the preparation of her mail-in voting ballot ... suggest by word, sign, or gesture to Ramona Benitez how she should vote, then you will find the defendant guilty as charged.

■ Appellant argues that this language would have allowed the jury to convict her for conduct not prohibited by the statute. She testified and maintained throughout the proceedings that she gave only mechanical assistance by pointing to Gonzales's name after Mrs. Benitez had asked her where it was on the ballot. The charge above makes it illegal for the assistant to tell the voter how to vote. The closing arguments of both parties defined the application of this language. Appellant's counsel argued her defensive theory before the jury. The State did not request a conviction for the permissible assistance that appellant claims she rendered. In fact, the prosecutor's entire closing argument was geared to refute appellant's claim and to obtain a conviction for conduct that is proscribed—an assistant telling a voter who to vote for while helping the voter fill out her ballot. Additionally, the character of the testimony presented reveals that at all times the State was attempting to prove that appellant did not render purely mechanical aid, but that she had indeed told Mrs. Benitez how to vote.

This is what the jury found. We find that appellant did not suffer egregious harm from error in the charge, if any error existed. Accordingly, point two is overruled.

■ In her third point of error appellant claims that the trial court admitted evidence of extraneous offenses committed by third parties and that this evidence so prejudiced the jury as to deprive appellant of a fair trial. Appellant admits in her brief that counsel did not object to most of these references at trial. In failing to object or raise the issue, appellant has waived it. Tex.R.App.P. 52(a); *Williams v. State*, 773 S.W.2d 525, 534–535 (Tex.Crim.App. 1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). Further, we note that the only objections appellant did properly raise were for hearsay and leading questions. The record shows that the questions were rephrased and the testimony was then admitted without objection. Thus, we find that appellant waived these complaints by failing to object. Appellant also urges objection to the third party offenses pursuant to Rule 403 of the Texas Rules of Criminal Evidence (evidence should be excluded because the probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues). Once again, this objection was not raised at trial and is therefore waived.

■ The only instance where appellant did object was to Eddie Hons's testimony. Hons, a Sheriff's Department investigator, described how he conducted the investigation of voter fraud allegations in Bee County. The impetus for the investigation had been numerous callers complaining that elderly Hispanics who had voted absentee had been intimidated by workers helping with the absentee balloting. When asked to recount the substance of some of those threats, Hons testified that some voters had been told that their social security benefits would be terminated if they did not vote for a particular candidate. Appellant objected on grounds that the allegation did not apply to the Benitez matter and was therefore irrelevant. Counsel did not specifically object on grounds that the allegation was an extraneous offense implicating appellant. An error presented on appeal will not be considered if it varies from the specific objection made during trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim.App.1986); *Vanderbilt v. State*, 629 S.W.2d 709, 721 (Tex.Crim.App.1981); *Baldonado v. State*, 745 S.W.2d 491, 496 (Tex. App.—Corpus Christi 1988, pet. ref'd). Appellant argues that the numerous references to extraneous third party offenses, though unpreserved, constitute prejudicial error requiring reversal. She then concludes by claiming that the reference to social security benefits alone constitutes reversible error. Complaints about the admission of extraneous offenses are usually made when the extraneous offenses refer to previous conduct of the *accused*. In this case, the objectionable references do not implicate appellant. The prosecutor's reference to South Texas's reputation for political corruption, gained from the controversy over Lyndon Johnson's election to the United States Senate, clearly does not refer to any actions on the part of appellant; neither does the State's discussion of widespread political corruption in Mexico. Regarding appellant's complaint about the threats to voters' social security benefits, the prosecutor specifically stated in front of the jury that Mrs. Benitez had not been threatened with termination of her social security benefits. The admission of extraneous offenses that are not linked to the defendant cause no harm to the defendant. *Stafford v. State*, 813 S.W.2d 503, at 508–509 (Tex.Crim.App.1991). Thus, there is no possibility of prejudicial error to the appellant here, if indeed any error occurred.

■ Appellant also complains of improper jury argument when the State characterized the whole incident as "vote buying." The State's jury argument must be confined to four areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) response to defendant's argument, and (4) pleas for law enforcement. *Briddle v. State*, 742 S.W.2d 379, 389 (Tex.Crim.App.1987), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Hinojosa v. State*, 788 S.W.2d 594, 597 (Tex.App.—Corpus Christi 1990, pet.

ref'd). The State's argument here was a reasonable deduction from the evidence, and it was made to refute appellant's claim that she had merely showed Mrs. Benitez where Gonzales's name was on the ballot without trying to influence her vote in any way. We find that the jury argument was not improper. Point three is overruled, and the judgment of the trial court is AFFIRMED.